No. 10,525.

INDUSTRIAL COMMISSION, ET AL. *v.* ERNEST IRVINE, INC., ET AL.

Decided February 5, 1923.

Proceeding under the workmen's compensation act. Findings and award for claimant reversed by district court.

*Reversed.*

1.  WORKMEN'S COMPENSATION—*Court Findings.* In a workmen's compensation case, the trial court should declare its conclusion upon each specific question before it.

2. *Fact Findings by Commission.* Courts have no power to disturb findings of the industrial commission entered on conflicting evidence.

3. *Accident Arising out of, and in Course of Employment.* An automobile salesman, being directed to take a car of his employer home with him for demonstration purposes the following day, in order to protect it from freezing, took it to a heated garage to leave it for the night. The proprietor of the garage, mistaking him for a burglar, shot and killed him. Held, that the employe was killed in an accident arising out of and in the course of his employment.

4. *Sufficiency of Evidence.* In a workmen's compensation case, the contention that there was no evidence to support the findings of the industrial commission, overruled.

5. *Accident Arising out of, and in Course of Employment.* Where the hazard of an employe's occupation is not common to the general public, and he sustains an accident which would not have occurred but for his employment, while acting within the scope of his duties, it is held that the injury arose out of, and in the course of his employment.

6. *Duty of Trial Court.* In a workmen's compensation case, there being no claim of fraud and the findings of the commission clearly supporting the award, the trial court has but one duty, i. e., to examine the evidence for the sole purpose of determining if it supports the findings.

*Error to the District Court of the City and County of Denver, Hon. Warren A. Haggott, Judge.*

Mr. VICTOR E. KEYES, attorney general, Mr. RUSSELL W. FLEMING, attorney general, Mr. JOHN S. FINE, assistant, Mr. JOSEPH P. O'CONNELL, assistant, Mr. JOHN A. RUSH, Mr. FOSTER CLINE, Mr. EUGENE HIGGINS, for plaintiffs in error.

Messrs. DANA, BLOUNT & SILVERSTEIN, for defendants in error.

*En banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFF in error the Industrial Commission is herein-

after referred to as "the commission," plaintiff in error Rose Lewis as "the plaintiff," defendant in error Ernest Irvine, Inc., as "the corporation", defendant in error Maryland Casualty Company as "the Insurance Company," and John Lewis, formerly the husband of plaintiff, as "the deceased."

February 28, 1922, deceased was employed by the corporation in its business of selling automobiles. Upon entering the garage of Oscar J. Harris on the evening of that day he was shot and killed by Harris under the assumption that he was a burglar who had entered the garage with felonious intent. The corporation was operating under the Workmen's Compensation Act and plaintiff, claiming that her husband's death was due to an accident arising out of and in the course of his employment, brought this action before the commission for compensation. Findings and award in her favor were, on appeal by the corporation and the Insurance Company, reversed by the district court, and to review that judgment the plaintiff and the commission prosecute this writ.

Three questions were raised by the pleadings: 1. Did the findings support the award? 2. Did the commission act without or in excess of its powers? 3. Was the evidence "sufficient?"

It is apparent to us that the trial court, mistaking its power and duty in the premises, disposed of this case upon the question of the sufficiency of the evidence. Its finding was:

"This cause having been heretofore submitted to the court and by the court taken under advisement upon its merits, and the court being now sufficiently advised in the premises, doth find the issues joined for the plaintiff and that the finding and award of the Industrial Commission be set aside."

The judgment of the court should have disclosed its conclusion upon each specific question before it. It had no power to disturb findings of the commission entered on conflicting evidence. *Industrial Commission v. Johnson,* 66

Colo. 292, 181 Pac. 977. No fraud being charged, that court was limited, as is this, to the determination of questions 1 and 2, *supra.*

There is evidence in the record before us to justify the following conclusions:

From October, 1921, to January, 1922, Harris and deceased were partners operating a garage at 1445 S. Broadway in the city of Denver. During that time and up to the date of the death of deceased these two men were on friendly and intimate terms. In January, 1922, deceased sold out to Harris and turned over to him the possession of the business and the keys of the building. Thereafter deceased sometimes called at the garage, and Harris visited at his home. Deceased began working for the corporation as a salesman immediately after the dissolution of his partnership with Harris. His duties were to demonstrate cars to prospective purchasers and aid in making sales. He supposed at the time of the dissolution of the partnership that he had turned over all the keys in his possession. Several persons kept cars in the Harris garage and carried keys to the door because the place was closed early in the evening and not open during the night. After Harris and deceased began business there in October, several keys were brought in by persons not known to have possession thereof. Two or three days preceding the shooting deceased and his minor son, searching a box at their home for a pencil clip, found one of these keys. Deceased hung it on a nail in his kitchen and left word with his wife to deliver it to Harris if the latter called in his absence. On February 25, 1922 (Saturday), the corporation had one prospective purchaser in Denver and another in Littleton. The corporation's place of business was closed early in the evening and not open on Sundays. Deceased's employer directed him to take a car home with him that evening that it might be accessible for demonstration to the Denver customer early Sunday morning and the Littleton prospect later in the day. Deceased acted accordingly. He reached his home in the city and had supper about 6:30 p. m. His own garage was

unheated, the night was cold and threatening to get colder. He discussed with his wife the danger of the car freezing up and she suggested the difficulty be obviated by taking it to the Harris garage and storing it for the night. Acting on this suggestion after supper he took the key and departed with that object in mind. His duty to his employer under the circumstances was to take care of the car in his charge and use his own best judgment to that end. His relations with Harris were such that it was perfectly satisfactory to the latter for him to come and go at the Harris garage at any time of day or night and Harris, neither prior to the shooting nor afterwards, had the slightest suspicion of deceased. Had he known that the latter carried a key to his garage he would have had no objection thereto and no objection to the storage of the car therein. The Harris garage was frequently full at night with the exception of a passage way which would hold one or two cars and had at times been so completely filled that an additional car could not be stored therein. Prior to the day in question a number of thefts of oil, gasoline and tools had been committed from the Harris garage. Harris, after consultation with the police, had determined to lie in wait for the perpetrators of these thefts and on the night in question was concealed in his garage for the purpose of apprehending them. He was armed with a pistol and the garage was in darkness. Deceased, ignorant of the presence and purpose of Harris, drove past the door and getting out of the automobile went to the garage to ascertain if there was room therein for further storage. He knew that just inside the door was an electric light switch. He stepped in, closed the door, and without turning on the switch took one step away from the door, when Harris called to him to throw up his hands. Deceased did not respond, but putting both hands in his pockets, started to take a second step. Harris repeated his demand and shot. The ball passed through deceased's hand in his pocket, cutting off one finger and entering the abdomen. As he fell Harris came to him and for the first time discovering his

identity cried out, "My God, Billy, what are you doing' here?" Deceased was taken to a hospital and shortly thereafter died. Prior to his death he was visited at the hospital by his wife, his employer and Harris. He talked over the transaction with each and, cognizant of the fact that death was near, repeated to each the details and purpose of his visit to the garage as above outlined, the only variation being that at one time he said to Harris that he was going to get his tools. (At the time of the dissolution of the partnership he had left some of his tools in the garage.) He explained his failure to respond to the demand of Harris to throw up his hands by the assertion that when he heard his voice he recognized the speaker and was dumbfounded, that he thought he was joking and hesitated too long. It also developed that deceased was totally unarmed. Harris had warned all persons, known to him to have keys to the garage, of his own presence and plan, and would have told deceased had he known that he had a key or had there been any occasion to speak to him about it.

The commission found:

"On the evening of February 25, 1922 William John Lewis was employed as an automobile salesman by the employer above named (the corporation). On the evening of February 25, 1922 the decedent left his employer's place of business with a demonstrator. After the decedent had finished with his supper he left his residence for the purpose of storing the demonstrator at 1445 S. Broadway, Denver, Colorado. The decedent was shot by Oscar J. Harris under the assumption that he was a burglar and was attempting to burglarize the Harris garage.

The evidence submitted herein indicates that the decedent was killed while performing duties arising out of and in the course of his employment, that is to say, he was shot while attempting to take care of his employer's property. The finding therefore is that decedent's death arose out of and in the course of his employment and that his

widow and minor son are entitled to maximum compensation as provided by law."

These findings are severely criticized by counsel for defendants in error. It must be admitted that they are models of neither particularity nor lucidity. In our opinion however they contain every element essential to their validity and that they support the award is too clear for argument. It appears therefrom that the corporation had entrusted one of its automobiles to deceased. It was his duty under the terms of his employment to give it proper care for the night. While attempting to perform that duty by storing the car in the garage of one Harris the latter mistook deceased for a burglar and shot and killed him, hence the commission finds that deceased was shot while attempting to care for his employer's property and that the cause of death was an accident arising out of and in the course of his employment.

The contention that the commission acted without or in excess of its powers is based upon the claim that, assuming the findings are sufficient to support the award, there is no evidence to support the findings. That contention, as set forth in the complaint and amplified in the argument, may be briefly summarized thus: 1. Deceased was attempting to commit a burglary. 2. He departed from his employment when he left the car and entered the Harris garage. 3. He went to the Harris garage for a purpose of his own, i. e., to secure his tools. 4. He was not trying to store the car because he had driven past the garage and walked back to it. 5. He had no authority to enter the Harris garage. 6. It was not necessary for him to enter the garage in the course of his employment. 7. The car driven by him was not customarily stored in the Harris garage. 8. The commission's decision of a disputed fact rests upon hearsay.

These contentions may be as briefly answered thus: 1, 2, 3 and 4 were questions of fact for the decision of the commission and their finding can not be disturbed. 5 and 7 were immaterial. 6 rested in the discretion of deceased

under the terms of his employment. 8 is based upon the claim that the only evidence of a lawful motive on the part of deceased in visiting the Harris garage is the report of his statements made after the shooting and while in the hospital, that this is mere hearsay and is entitled to no weight as against undisputed facts and circumstances which indicate a felonious motive. Assuming the law, the argument is not supported by the record. Plaintiff testified that her husband's visit to the Harris garage was at her suggestion and the purpose of it was as stated by him. Many admitted circumstances support this testimony. The commission has found it true and that finding is final.

Counsel for defendants in error insist that the facts are uncontradicted hence this court should treat the facts appearing in evidence as findings and apply the law thereto. *Prouse v. Industrial Commission,* 69 Colo. 382, 194 Pac. 625. This is probably correct except as to one fact, i. e., deceased's motive in going to the Harris garage and his purpose in entering it. All other material facts are undisputed and support the findings and award and this one has been resolved in favor of plaintiff by the commission.

The hazard, out of which arose the injury which caused the death of Lewis, was not common to the general public, the injury would not have occurred but for his employment, and the act being performed by him was within the scope of his duties. He was doing the duty which he was employed to perform, hence received the injury "in the course of" the employment; a reasonable person familiar with the entire transaction on that evening would have contemplated the result as probable from the exposure occasioned by the nature of the employment, hence the injury "arose out of" the employment. *Industrial Commission v. Anderson,* 69 Colo. 147, 150, 169 Pac. 135 (L. R. A. 1918F, 885), citing *In re McNicol, et al.,* 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306.

There being no claim of fraud and the findings clearly supporting the award the district court had but one duty

to perform, i. e., to examine the evidence for the sole purpose of determining if it, or reasonable inferences drawn from it, would support the findings. *Industrial Commission v. Johnson,* 66 Colo. 292, 181 Pac. 977. And having so determined affirm the findings and award.

The judgment is accordingly reversed with directions to the district court to enter judgment affirming the findings and award of the Industrial Commission.

MR. CHIEF JUSTICE TELLER not participating.

MR. JUSTICE ALLEN sitting as Chief Justice.