**Deborah S. TOLBERT, Plaintiff,**

v.

**MARTIN MARIETTA CORPORATION, Defendant.**

**Civ. A. No. 83–C–1465.**

United States District Court, D. Colorado.

Nov. 15, 1985.

Jack Wesoky, Englewood, Colo., for plaintiff.

John Webb, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

The plaintiff, a secretary at Martin Marietta Aerospace, while on her way to lunch within the facility, was assaulted and raped by Arthur Martinez, a Martin Marietta janitor. She has sued Martin Marietta, alleging that it negligently hired the assailant, and negligently failed to make its premises reasonably safe for employees. Plaintiff claims that Martin Marietta knew or should have known that Martinez had a record of past behavior indicating that he might assault or rape persons on its premises. Jurisdiction is grounded on diversity of citizenship. 28 U.S.C. § 1332.

Martin Marietta previously filed a motion to dismiss on the ground that worker's compensation is the plaintiff's exclusive remedy. I denied that motion because there were factual issues to be resolved before it could be decided. Discovery now has been conducted, and Martin Marietta has filed a motion for summary judgment asserting the same ground. Plaintiff has not contended that there are disputed issues of material fact nor have I discovered any. The case, therefore, is ripe for resolution of the summary judgment motion.

The sole issue is whether the Colorado Workmen's Compensation Act ("the Act"), Colo.Rev.Stat. 8-40-101 *et seq.* (1973 and 1984 Cum.Supp.), covers the plaintiff's injury. If it does, worker's compensation is her exclusive remedy and this tort action is barred. Colo.Rev.Stat. 8-42-102 (1974 Cum.Supp.). Plaintiff asserts that her injury is not covered by worker's compensation, presumably because she expects that a tort action would yield a larger recovery. Martin Marietta, on the other hand, apparently is willing to pay the worker's compensation award to avoid risking a large tort verdict.

Whether worker's compensation is invoked as a defense by an employer or as the basis of a claim by an employee the test of applicability is the same. Compensation is to be awarded, and thus the tort remedy is abolished, if the statute's list of conditions are all met. Thus, worker's compensation applies:

"(a) Where, at the time of the injury, both employer and employee are subject to the provisions of said articles and where the employer has complied with the provisions thereof regarding insurance;

(b) Where, at the time of the injury, the employee is performing service arising out of and in the course of his employment;

(c) Where the injury or death is proximately caused by an injury or occupational disease *arising out of and in the course of* his *employment* and is not intentionally self-inflicted." Colo.Rev. Stat. 8-52-102 (1974 Cum.Supp.) (Emphasis added.)

Here it is undisputed that condition (a) is met, and condition (b) does not appear to be seriously disputed. Thus the issue is whether the injury "arose out of and in the course of" the plaintiff's employment within the meaning of subsection (c). Although the injury did arise in the course of her employment, the plaintiff contends that it did not "arise out of" the employment. The "arising out of" condition creates a prerequisite that there be some causal relationship between the employment and the injury.

Courts have interpreted the "arising out of" language in a number of different ways and have developed different tests of causality. Because the injury occurred in

Colorado and the Colorado Workmen's Compensation Act is to be construed, the Colorado test of causation must be applied in this diversity case.

Unfortunately, Colorado courts have not consistently applied any single test to determine whether an assault by a co-employee arises out of the employment relationship. The defendant argues that positional-risk analysis applies to categorize the case as one covered by compensation. The positional-risk doctrine has been defined thus by a leading authority:

> "An injury arises out of the employment if it would not have occurred but for the fact that the conditions and obligations of the employment placed claimant in the position where he was injured.... This theory supports compensation, for example, in cases of stray bullets, roving lunatics and other situations in which the only connection of the employment with the injury is that its obligations placed the employee in the particular place at the particular time when he was injured by some neutral force, meaning by 'neutral' neither personal to the claimant nor distinctly associated with the employment." 1 Larson, *Workmen's Compensation Law*, § 650 at p. 3–5.

Invoking this rule, Martin Marietta asserts that the plaintiff's injury is covered by Colorado worker's compensation because: (1) her employment placed her within the building where she was injured, and (2) the assault was a "neutral" force within the above definition.

Defendant further relies on *Industrial Commission v. Ernest Irvine, Inc.*, 72 Colo. 573, 212 P. 829 (1923), a case in which a car salesman was mistakenly shot and killed by a friend as he was parking a "demonstrator" car belonging to his employer in his friend's garage in order to protect the car from freezing. The Colorado Supreme Court there upheld an award of worker's compensation, affirming the Commission's conclusion that the injury "arose out of" the employment because the employment subjected the decedent to a risk not common to the general public. In *Ernest Irvine, Inc.*, however, the result turned on the Commission's specific findings that "the decedent was killed while performing (job) duties ..." and that "he was shot while attempting to take care of his employer's property." *Id.* 212 P.2d at 831. In contrast, the rape here was not causally related to any employment duties being performed by the plaintiff when she was assaulted, for she was performing none.

*Ernest Irvine supra*, applied the "increased-risk" test of causality. Under the increased-risk test, compensation is awarded only if the employment increases the worker's risk of injury above that to which the general public is exposed. *See* 1 Larson, *Workmen's Compensation Law*, § 6.30 at p. 3–4. Thus, in *Ernest Irvine, Inc.* the Colorado court held,

> "The hazard out of which arose the injury which caused the death ... was not common to the general public, the injury would not have occurred but for his employment, and the act being performed by him was within the scope of his duties. He was doing the duty which he was employed to perform, hence received the injury 'in the course of,' the employment; a reasonable person familiar with the entire transaction on that evening would have contemplated the result as probable from the exposure occasioned by the nature of the employment, hence the injury 'arose out of' the employment."

It is apparent that if Colorado presently applies the "increased risk" analysis, the instant plaintiff would not be covered by worker's compensation. Certainly her employment as a secretary within a secured defense facility would not be expected to increase her risk of sexual assault above that to which women in the general public are exposed.

Colorado first applied "positional-risk" analysis four years after *Ernest Irvine, Inc.* was decided. *Aetna Life Insurance v. Industrial Commission*, 81 Colo. 233, 254 P. 995 (1927).

In *Aetna Life* the court upheld an award of compensation to a farmhand who was struck by lightning while returning from working on a neighbor's farm. The court there formulated the "positional-risk" test as follows:

> "When one in the course of his employment is reasonably *required to be at a particular place at a particular time* and there meets with an accident, although one which any other person then and there present would have met with irrespective of his employment, that accident is one 'arising out of' the employment of the person so injured." 254 P. at 996. (Emphasis added).

It can readily be seen that the "positional-risk" test provided substantially broader coverage of injuries than did the formerly applied increased-risk test. Unfortunately, the Colorado courts on several more recent occasions have departed from the "positional risk" test to impose a higher standard of causal relationship to the employment as the reason for denying worker's compensation in assault cases. For example, in *Industrial Commission v. Strome*, 107 Colo. 54, 108 P.2d 865 (1960), worker's compensation was denied to a claimant who had been hit on the head by a shovel wielded by a fellow employee. *Strome* adopted the rule that:

> "Ordinarily assaults by co-employees cannot be considered as incidental to the employment and so an injury to an employee assaulted by a fellow workman does not generally arise 'out of the employment.'
>
> \*     \*     \*     \*     \*     \*
>
> Injuries resulting from an assault may, however, be found to arise out of or in the course of the employment where the assault is one which might be reasonably anticipated because of the general character of the work, or of the particular duties imposed on the workman...." 108 P.2d at 865.

Notably, in *Strome* there was a greater causal link to the employment than is present here, for Mr. Strome was struck by a shovel, a work tool in the hands of a co-employee. Moreover, both the victim and assailant in *Strome* were apparently on duty, at the assigned work place, and performing tasks for which they had been hired. The *Strome* rule was reiterated in *Wisdom v. Industrial Commission*, 133 Colo. 266, 293 P.2d 967 (1956).

On the other hand, the plaintiff here alleges that no "condition or obligation" of her employment required her to go to lunch, or to take the route where she was walking when she was assaulted. She asserts that she was not on duty when attacked, nor was she performing any task on behalf of the employer. She was not at her usual assigned work place, or at any place where her job required her to be. Apparently it was a matter of indifference to the employer whether she chose to lunch at her desk, at the company cafeteria, or elsewhere.

Moreover, the parties here agree that the assault on Ms. Tolbert had no relation to her personal life. Prior to the assault, Tolbert and Martinez had had only the slightest contacts, and those were only at Martin Marietta. These contacts involved the plaintiff incidently seeing her assailant perform janitorial duties in her work area. When asked through interrogatory to describe "any facts or circumstances tending to show that the attack was directed against the plaintiff as opposed to any other woman who might have been present at the place and time of the assault," the plaintiff answered that she was not aware of any such facts or circumstances.

Thus it is clear that the rape was neither distinctly associated with her employment, nor personal to her. It was a non-employment motivated act of wanton brutality directed at the plaintiff because she was a woman. There is nothing to indicate that any other woman—whether or not a Martin employee—who happened to be in the same area at the time of the attack would not have become the victim. Ms. Tolbert, on the other hand, might well have escaped unharmed had she chosen to lunch at her desk that day. It is clear that she was not raped because of the nature of her duties

or the nature of her workplace environment, nor because of any incident or quarrel growing out of the work.

Here, too, the very nature of the tort is intensely personal rather than of the type one might expect to arise out of employment. Worker's compensation was intended as a beneficial plan to provide financial help for workers who incur on-the-job injuries caused by job risks. In the broad sense, considering the policy and purpose of workers' compensation, the rape of a worker is simply not the type of injury intended to be covered.

Moreover, the justification for making worker's compensation an exclusive remedy, and requiring employees to give up their traditional negligence actions against their employers, was the rationale of trade-off. The employee gave up the right to sue the employer in tort in exchange for the employer's giving up the defenses of contributory negligence, assumption of risk and fellow servant liability. Serious state constitutional questions would have been presented had employees been forced to relinquish their vested and long-recognized common law tort remedies without receiving any concomitant benefits through requiring the employer to give up defenses. Yet here, if Tolbert is relegated to her worker's compensation remedy, she will be deprived of her tort remedy without receiving any off-setting benefits, for the fellow servant rule, assumption of risk and contributory negligence could not have been invoked by an employer as defenses in tort cases like this one. Here the employer's negligence allegedly occurred in the employment screening process. Plaintiff had nothing to do with that process; she could not have been charged with contributory negligence or assumption of risk absent some participation in the process.

The type of fault asserted by the plaintiff further distinguishes the instant claim from the kind of cases intended to be covered by worker's compensation. Plaintiff here does not complain of injury through employer negligence in her work-place. Rather she complains that those in charge of pre-employment screening—of employment decisions at the management level—were careless in letting a potential rapist be employed. The core conduct from which the injury ultimately resulted is simply not—by its nature—the kind of employer conduct intended to be immunized from tort liability by the worker's compensation scheme.

Both applicable Colorado precedent and sound rationale support holding that the worker's compensation statute has not abolished the plaintiff's tort claim in the circumstances here alleged. Adopting this position has the additional advantage of providing employers an incentive to make reasonable efforts to screen prospective employees so as to avoid hiring rapists or those having the identifiable characteristics of potential rapists. Tort law does not impose strict liability—far from it; the plaintiff has the burden of showing negligence, causation, and damages. Women in the workplace are surely entitled to at least the protection of reasonable care where a prospective employee's available past record indicates a substantial foreseeable risk that, if employed, he may rape some woman he encounters on the employee's premises.

The defendant's motion for summary judgment is denied.