Helen LEGIONS, Appellant,

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Appellee.**

Supreme Court of Tennessee, at Jackson.

Jan. 27, 1986.

Charles S. Kelly, Marianna Williams, Dyersburg, for appellant.

Charles H. Barnett, Jackson, for appellee.

OPINION

McLEMORE, Special Judge.

In this worker's compensation case the Chancellor found that plaintiff's injuries

which were incurred on June 3, 1982, were a result of her misconduct, and that her injuries did not arise out of and in the course and scope of her employment. The plaintiff has appealed.

The plaintiff has been employed as county supervisor for the Crockett County Office of the Northwest Tennessee Economic Development Council since 1975. She supervises the office which offers services for the poor, including information referral and nutrition assistance. She is responsible for doing reports and record keeping in the office, as well as supervising two aides. The job requires that the plaintiff also do garden follow-ups, and, in some instances, transport patients to the doctor.

On June 3, 1982, the office was located behind a Crockett County school building. There were other offices located there. The number was not proved but the Unemployment Office, CETA, and Headstart were mentioned. There was a common parking lot for persons employed in or visiting these offices.

Approximately two years before plaintiff had purchased with her own money a used drink machine and placed it in the office. She testified that after she had recovered her cost in about a year after purchase, she considered the drink machine the property of the office, and the profits from the machine were used for supplies in the office and for refreshments at meetings. She also testified that drinks were purchased by the case for others, such as a church group, and that the Coke delivery man would bring their Cokes and there swap them out.

On June 3, 1982, a deliveryman for Coca-Cola, while delivering drinks for the drink machine and some extra for the church which was having a benefit, parked his delivery truck in the middle of the parking lot, thus blocking several parked cars so that they could not be moved from the lot.

Rex Lewis, who is employed by the Juvenile Court as a youth service officer, and who is a bonded deputy sheriff in Crockett County with the power to arrest, was visiting the CETA office on business. When Lewis came out of that office, he found that the Coca-Cola truck had blocked his car in the parking lot.

Lewis approached the deliveryman and asked him to move the truck. The deliveryman told him that he would move the truck when he was through and went inside with drinks. Lewis wrote the deliveryman a ticket, and the deliveryman again went inside "and asked one of the ladies if they'd come to the door and look to see where I was parked at because I didn't have anywhere else to park." At that moment, plaintiff was on the telephone, and an aide, Ms. Nettie Jelks, went outside and observed the situation.

Plaintiff then came out of her office and went to Lewis and asked him what he was doing. She said, "[y]ou can't write tickets on our parking lot. This parking lot has always had problems with parking." Lewis told the plaintiff it was none of her business what he was doing, whereupon she replied, "[w]ell, Rex, all right. You just go ahead and you write your ticket." She then called him a very explicit vulgar four word name. Lewis undertook to arrest plaintiff, taking hold of her and attempting to get her to his unmarked car, stating that no one called him such a name. Plaintiff protested, told him to turn her loose, and adamantly stated that she would not go anywhere with him. He continued in his efforts to put her in the car. She told him she had a kidney infection and needed to go inside to the bathroom. She assured him that if he would get someone from the Sheriff's office up there, she would go with them. Lewis turned the plaintiff loose to go to the bathroom, and in the meantime called the Sheriff's office for back-up with a four-door car.

Plaintiff watched out the window of her office until a Sheriff's patrol car arrived. She went outside and the deputies in the patrol car remained in the car. Lewis came to her and asked if she would go with him to jail and she said, "I'm not going no damn where with you." He took hold of her and she "jerked real hard to get away from him. When I did, I slipped out of his grip,

and I fell back real hard on the ground and slid. And, of course, I slid on my back and possibly my feet were sticking in the air because I'm sure they were because I had a hard fall. I looked over, and he looked like he might have been down toward—on the ground or toward the ground. And I was starting to try to get back up, and he came back and he grabbed hold of me again. Well, by this time I was hurting so bad that I didn't have any resistance left for him to get hold of me. So I let him lead me to the patrol car and put me inside."

There is evidence that plaintiff was kicking at Lewis, and during this prolonged altercation plaintiff told Lewis that she was resisting arrest and called him more than one kind of a ____ ___ __ ___.

Plaintiff was taken to jail in the Sheriff's patrol car and charged with disorderly conduct and interfering with an officer. She was convicted on the latter charge, from which she did not appeal.

Plaintiff contends that she suffered compensable injuries as a result of this altercation with Lewis.

Plaintiff-appellant argues that this court's decisions in *DeBow v. First Inv. Property, Inc.*, 623 S.W.2d 273 (Tenn.1981); *Bell v. Kelso Oil Co.*, 597 S.W.2d 731 (Tenn.1980) require a reversal of the Trial Court. These cases hold that there is no formula which will clearly define the line between accidents and injuries which arise out of and in the course of employment and those which do not, but generally injury arises out of and in the course of employment if it has a rational, causal connection to work and occurs while employee is engaged in duties of employment. Any reasonable doubt as to whether injury arose out of employment is to be resolved in favor of employee.

*DeBow* and *Bell* are willful assault cases where there was a showing of (1) a causal connection between the employment and the injury; or (2) a risk incidental to or peculiar to the employment. In *DeBow* it was the requirement of the employer for the assaulted and robbed employee to keep money in her possession to further the interests of the employer. In *Bell* it was the employee's work environment which subjected him to the assault, and the assailant was motivated by the conditions of the work to make the assault.

We have not been cited, nor have we found, a case where an employee was awarded compensation for injuries incurred while interfering with an officer or resisting arrest. There are numerous cases in other jurisdictions that hold that illegal or criminal conduct by an employee in the course of his employment does not necessarily remove him from course and scope of employment for worker's compensation purposes. These cases seem to rest on the proposition that the illegal conduct was a method of doing the employer's work and not a deviation from the area of employment. I A *Larsen, Workmen's Compensation Law*, § 35.20. The result would be different if the claimant had been doing something he was not authorized to do, rather than doing a required act in an unauthorized manner. *Id.*

This Court held in *Travelers Insurance Company v. Googe*, 217 Tenn. 272, 279, 397 S.W.2d 368, 371 (1966):

In order for an employee to recover under the Workmen's Compensation Act, he must prove he is an employee; that he sustained an accidental injury which has been defined as being an unusual, fortuitous, or unexpected happening; causing an injury which was accidental in character; and that such accident and injury grew out of and in the course of his employment. *Smith v. Tenn. Furn. Ind. Inc.*, 212 Tenn. 291, 369 S.W.2d 721 (1963).

The phrase, "in the course of," refers to time and place, and "arising out of," to cause or origin; and an injury by accident to an employee is "in the course of" employment if it occurred while he was performing a duty he was employed to do; and it is an injury "arising out of" employment if caused by a hazard incident to such employment. *Shubert v. Steelman*, 214 Tenn. 102, 377 S.W.2d 940 (1964).

The issue then is whether the injury occurred while plaintiff was performing a duty that she was employed to do and the injury was a hazard of the employment. The foregoing incorporated quotation from *Smith v. Tenn. Furn. Ind. Inc.*, places the burden of proof on plaintiff.

After carefully considering the evidence we have concluded that plaintiff has failed to carry the burden of proof on the foregoing issue, and that the trial court was correct in holding that the plaintiff's injuries did not arise out of and in the course and scope of her employment.

There is no testimony from plaintiff, her superior or any other witness that states that plaintiff had any supervisory authority over the parking lot as a result of her employment and was thus involved with duties created by her job at the time she was injured. The proof most favorable to plaintiff on that matter is the testimony of plaintiff: "There's a possibility that I would have thought that anything in the office would have been mine to have taken care of."

As previously stated, there were at least three other unrelated offices whose employees and clients used the parking lot. The witness, Mrs. Riddick, who was also blocked in by the Coca Cola truck and who observed and heard a portion of the altercation between plaintiff and Lewis, was visiting the unemployment office. Lewis was visiting a CETA office. Plaintiff testified that it was nothing unusual for people to get blocked in on the parking lot. Ms. Jelks, a fellow worker with plaintiff testified, "[w]e've all been blocked in many times. Not only our people but other people that came back in there to other buildings were blocked in. I mean, it was no big thing to get blocked in, and I've been there since we moved up there; but nobody else ever acted like that. Sometimes we'd have to park on the front ourselves and walk around there because we couldn't get in due to the cars." We think from this evidence the trial court could very well determine that plaintiff did not have supervisory authority over the parking lot and was not involved with duties created by her job.

The liberal construction rule applying to worker's compensation cases is not broad enough to supply proof where none exists.

The proof indicates that the Coca Cola truck was on the common parking lot for the purpose of servicing a drink machine that was owned by the plaintiff personally and was used not only by the employees in the employer's office, but employees in other offices and by individuals and groups not connected with any of the offices. The employer provided supplies for the offices but did not supply a drink machine. The fact that the plaintiff, on her own, used profits from the machine to buy things that she considered beneficial to the office does not increase her authority over the parking lot, or make the location of the delivery truck incidental to her employment.

We are of the opinion that the trial court could properly find that any injuries suffered by plaintiff did not occur while the employee was rendering service which she was hired to do to her employer and, therefore, was not in the course of the employment. We therefore affirm on this issue.

Having affirmed the trial court's finding on the foregoing issue, it is unnecessary to discuss the issue of willful misconduct.

We are of the opinion that appellee's motion for damages for frivolous appeal should be overruled, and we do not deem the appeal to be frivolous.

The costs are taxed against plaintiff-appellant, Helen Legions, for which let execution issue, if necessary.

BROCK, C.J., and FONES, COOPER and HARBISON, JJ., concur.