**Junee KIRK, Plaintiff,**

v.

**Griff SMITH, James Burks, and School District No. 1 in the County of Pitkin, State of Colorado, Defendants.**

Civ. A. 85–C–2081.

United States District Court, D. Colorado.

Dec. 2, 1987.

Larry F. Hobbs, Hobbs/Bethke & Assoc., Denver, Colo., for plaintiff.

Jerry Tompkins, Traylor, Arnold, Tompkins & Black, Grand Junction, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

Plaintiff Junee Kirk asserts a claim under 42 U.S.C. § 1983 for infringement of her First Amendment rights, together with pendent state law claims of assault and outrageous conduct. A tenured teacher for School District No. 1 in Pitkin County, Colorado ("District"), she claims that her strongly expressed support for an expansion of the District's foreign language program evoked retaliatory actions against her by the defendant District and the individual defendants James Burks and Griff Smith. Burks is superintendent of the District and Smith is the school principal who directly supervises the plaintiff.

More specifically, the plaintiff alleges that the defendants reacted to her advocacy of program changes by unfairly reprimanding her, harassing her, and demoting her from the position of full-time teacher to that of permanent substitute teacher. Additionally, she claims that when she met with Burks to discuss her then forthcoming demotion, Burks discovered that she was tape-recording the discussion, and, in an effort to confiscate the tape recorder, physically assaulted her and threw her to the ground.

Defendants Burks and Smith have moved for summary judgment on the plaintiff's pendent state law claims on the grounds that: (1) the plaintiff's claims for assault and outrageous conduct are barred by the Colorado Workmen's Compensation Act; and (2) the allegation of outrageous conduct fails as a matter of law to state a claim upon which relief can be granted. The issues have been fully briefed and oral argument would not assist my decision.

Under Fed.R.Civ.P. 56(c), summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Here, there are apparently no substantial disputes regarding the material facts. Therefore, summary judgment is proper with respect to either or both of the plaintiff's state law claims for relief if, as a matter of law, she cannot prevail on them. In evaluating the pendent state claims, I must apply Colorado Law as defined by the Colorado courts. *Cf. Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

### A. Colorado Workmen's Compensation Act as a Bar to Recovery.

Defendants assert that the Colorado Workmen's Compensation Act ("the Act"), Colo.Rev.Stat. § 8–40–101 *et seq.*, covers the plaintiff's injury and provides an exclusive remedy that preempts her tort claims. *See* Colo.Rev.Stat. §§ 8–42–102 and 8–43–104; *Kandt v. Evans*, 645 P.2d 1300, 1302 (Colo.1982) ("[r]ecovery under the Act is meant to be exclusive and to preclude employee tort actions against an employer").

Whether worker's compensation coverage is invoked as a defense by an employer, or as the basis of a claim by an employee, the test of applicability is the same. Compensation is to be awarded, and the tort remedy is abolished, if the statute's conditions are all met. *Tolbert v. Martin Marietta, Corp.*, 621 F.Supp. 1099 (D.Colo. 1985), *appeal docketed,* No. 86–1188 (10th Cir. January 23, 1986). Worker's compensation applies:

"(a) Where, at the time of the injury, both employer and employee are subject

to the provisions of said articles and where the employer has complied with the provisions thereof regarding insurance;

(b) Where, at the time of the injury, the employee is performing service arising out of and in the course of his employment;

(c) Where the injury or death is proximately caused by an injury or occupational disease arising out of and in the course of his employment and is not intentionally self-inflicted." Colo.Rev.Stat. § 8–52–102(1).

Here, it is uncontested that condition (a) is met, and condition (b) does not appear to be in dispute. Plaintiff argues, however, that the third condition is not met. That is, she asserts that her claims for assault and outrageous conduct are not covered under, and therefore not barred by, the Act, because her injuries: (1) were almost entirely mental and emotional rather than physical; and (2) were not proximately caused by an incident arising out of and in the course of her employment. *See* Colo.Rev.Stat. § 8–52–102(1)(c).

#### 1. *Mental and Emotional Injuries.*

In *Luna v. City of Denver,* 537 F.Supp. 798 (D.Colo.1982), Judge Kane held that state law claims based mainly on mental suffering and humiliation, and only peripherally on physical pain and suffering, are not within the Act's exclusive remedy provision. The plaintiff in *Luna* had sued his employers alleging three federal claims as well as a state law claim for intentional infliction of emotional distress. He asserted that the defendants discriminated against him because of his Asian race by failing to promote him several times and instead promoting less qualified whites. Defendants contended that the claim for intentional infliction of emotional distress was barred by the Workmen's Compensation Act.

However, Judge Kane held that the injury was not covered by the Act because the plaintiff's claims were based almost exclusively on mental suffering and humiliation resulting from the discriminatory conduct of the employer. In construing § 8–43–104, Judge Kane stated:

"C.R.S. 8–43–104 bars only actions based on 'personal injuries or death' of a covered employee. 'Personal injury' is not defined by the act, but I do not think that it includes damages such as those alleged by the plaintiff in the present case, which are based mainly on mental suffering and humiliation, and only peripherally on physical suffering and pain." 537 F.Supp. at 801.

Similarly, in *Vigil v. Safeway Stores, Inc.,* 555 F.Supp. 1049 (D.Colo.1983), Judge Kane ruled that an employee's claim that his employer intentionally, negligently, or recklessly had caused him severe emotional distress by trying to entrap him into committing theft of company property, might not be compensable under the Act. He reasoned that the plaintiff's claims were not based on physical injury, relying partially on Professor Larson's treatise, *The Law of Workmen's Compensation.* There, it was stated that:

"If the essence of the tort, in law, is nonphysical, and if the injuries are of the usual non-physical sort, with physical injury being at most added to the list of injuries as a makeweight, the suit should not be barred. But if the essence of the action is recovery for physical injury or death, the action should be barred even if it can be cast in the form of a normally non-physical tort." 2A A. Larson, *The Law of Workmen's Compensation* § 68.34, at 13–62, 63.

■ Here, the plaintiff's alleged injuries are "based mainly on mental suffering and humiliation" and were almost exclusively non-physical.[1] In her deposition, the plaintiff stated:

---

1. Notably, the plaintiff did not combine her assault claim with a claim for battery. Battery is "[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff or a third person to suffer such a contact, or apprehension that such a contact is imminent." W. Keeton, D. Dobbs, R. Keeton, and D. Owen, *Prosser and Keeton on Torts* § 9, at 39 (5th ed. 1984). *See Colo. Jury Instr. Civil* 20:5. In contrast, "[a]ny act of such a nature as to excite an apprehension of a battery may

"I have experienced considerable emotional distress, physical distress, insomnia, I have been made to feel like a second class citizen, felt like a dog with a tail between its legs, I have been put down, I have been put in demeaning, a demeaning situation, substituting, I have been harassed, I have been snubbed, I have endured a loss of reputation in the articles that have been in the paper, the loss of respect in the community and professionally, I have been essentially a social pariah." (Plaintiff's deposition, at 119–20.)

Additionally, she alleges that she: (1) has lost her hair; (2) has been forced to take sleeping pills; and (3) has had to undergo psychological counseling for the first time. (*Id.* at 120.) She also contends that she has experienced thyroid problems, has been fatigued, has felt emotionally drained, and has lost weight. (*Id.* at 120–121.)

Notably, the plaintiff's alleged physical injuries are insignificant compared to her mental suffering. Plaintiff described the "physical distress" mentioned in the above-quoted material as consisting of headaches, a thyroid problem, and lost weight. (*Id.* at 120–21.) The only other physical injury was a soreness in the plaintiff's elbow that diminished or disappeared a few hours after the assault.

In support of their argument that the Act covers the plaintiff's alleged injuries, the defendants rely on *Kandt v. Evans,* 645 P.2d 1300 (Colo.1982), and *Ellis v. Rocky Mountain Empire Sports,* 43 Colo. App. 166, 602 P.2d 895 (1979). Those cases, however, are clearly inapposite. They stand for the proposition that injuries resulting from intentional torts may be compensable under the Act, but they are distinguishable because they involved plaintiffs with primarily physical injuries.

For example, in *Kandt* the plaintiff's claim for intentional infliction of emotional distress was based on the employer's intentional aggravation of a pre-existing work-related physical injury. It was the physical injury that precipitated the mental and emotional suffering. Additionally, the plaintiff had already been awarded disability benefits under the Workmen's Compensation Act prior to filing her lawsuit.

*Ellis* also involved a physical injury to the plaintiff. There, the plaintiff was a professional football player who sought damages for intentional infliction of emotional distress resulting from the physical consequences of his initial physical injury. *See Luna,* 537 F.Supp. at 801 (distinguishing *Ellis* from the situation where the intentional tort resulted in primarily mental suffering and humiliation).

Similarly, the reliance of the defendants here on two recent Colorado cases is misplaced. In their reply brief, the defendants contend that *Fort Logan Mental Health Center v. Walker,* 723 P.2d 740 (Colo.App. 1986), and *City of Boulder v. Streeb,* 706 P.2d 786 (1985), support their argument that the plaintiff's "mental and emotional injuries would be considered an 'injury' as that term is used" in the Act. (Defendants' reply, at 3.)

Yet neither *Walker* nor *Streeb* held that mere mental or emotional injuries are necessarily compensable under the Act. In *Walker,* the plaintiff was a nurse seeking worker's compensation for distress and hypertension allegedly caused by a disciplinary action following an altercation between the plaintiff and a patient. The Colorado Court of Appeals affirmed the Industrial Commission's determination that the plaintiff's job-related mental and emotional stress caused a preexisting mental condition to re-appear. There was conflicting testimony as to whether that preexisting condition was a "post-traumatic stress" disorder or a "paranoid personality" disorder. Importantly, a significant component of the court's holding rested on the principle that

---

constitute an assault." *Prosser* § 10, at 43. *See Colo. Jury Instr. Civil* 20:1.

"Assault and battery go together like ham and eggs. The difference between them is that between physical contact and the mere apprehension of it." *Prosser* § 10, at 46. Usually, both assault and battery are present. "[I]t is an assault when the defendant swings a fist to strike the plaintiff, and the plaintiff sees the movement; a battery when the fist comes in contact with the plaintiff's nose." *Id.*

"the aggravation of a preexisting condition is compensable" under the Act. 723 P.2d at 741. In contrast, the plaintiff here does not contend that her injuries aggravated a preexisting condition.

In *Streeb* the injuries suffered were physical. There the action was brought by the widow and children of an employee who had died from cardiac arrhythmia allegedly brought on by the combination of a preexisting congenital heart condition, mitral valve prolapse, and job-related mental stress. *But see Calderon v. Martin Marietta,* 675 F.Supp. 1279 (D.Colo. 1987) (Finesilver, J.).

I conclude that the emotional injuries here asserted were not covered by the Colorado Workmen's Compensation Act.

### 2. Did the Injuries "Arise Out Of" and "In the Course of" the Plaintiff's Employment.

Plaintiff asserts that her injuries did not "arise out of and in the course of" her employment within the meaning of § 8–52–102(1)(c). The phrase "arising out of" refers to cause or origin, and "in the course of" refers to time, place and activity at the time of injury. *Legions v. Liberty Mut. Ins. Co.,* 703 S.W.2d 620, 622 (Tenn. 1986). The statutory condition that the injury arise out of the employment creates a prerequisite that there be some causal relationship between the employment and the injury. *Tolbert,* at 1100. In contrast, an injury to an employee is "in the course of employment" if it occurred while he was performing a duty he was employed to do. *Legions,* at 622.

In considering whether the plaintiff's injuries arise out of her employment, I am aware that courts have interpreted the "arising out of" language in a number of different ways and have developed different tests of causality. *Id.* Because the instant injury occurred in Colorado and the Colorado Workmen's Compensation Act is to be construed, the Colorado test of causation must be applied.

Ordinarily assaults by co-employees are not considered as incidental to or arising out of the employment. *Wisdom v. Industrial Commission,* 133 Colo. 266, 293 P.2d 967, 968 (1956). Although there are exceptions to this rule, Colorado courts have not consistently applied any single test to determine whether an assault by a co-employee arises out of the employment relationship. *Tolbert,* at 1101. Rather, two different tests of causation have been used. These are the "increased risk" test and the "positional risk" test.

In *Industrial Commission v. Ernest Irvine, Inc.,* 72 Colo. 573, 212 P. 829 (1923), the court applied the "increased-risk" test of causation. Under this test, compensation is awarded only if the job increased the worker's risk of injury above that to which the general public was exposed. *See* 1 Larson, *Workmen's Compensation Law* § 6.30, at 3–4.

*Ernest Irvine* involved a car salesman mistakenly shot and killed by a friend as he was parking his employer's "demonstrator" car in the friend's garage in order to protect the car from freezing. The Colorado Supreme Court upheld an award of worker's compensation, affirming the Industrial Commission's conclusion that the injury "arose out of" the employment because the employment subjected the decedent to a risk not common to the general public. The court said:

"The hazard out of which arose the injury that caused the death ... was not common to the general public, the injury would not have occurred but for his employment, and the act being performed by him was within the scope of his duties. He was doing the duty which he was employed to perform, hence received the injury 'in the course of' the employment; a reasonable person familiar with the entire transaction on that evening would have contemplated the result as probable from the exposure occasioned by the nature of the employment, hence the injury 'arose out of' the employment." *Id.* 212 P. at 832.

In contrast is the "positional-risk" test of causation. That test has been defined thus by a leading authority:

"An injury arises out of the employment if it would not have occurred but for the

fact that the conditions and obligations of the employment placed claimant in the position where he was injured. . . . This theory supports compensation, for example, in cases of stray bullets, roving lunatics and other situations in which the only connection of the employment with the injury is that its obligations placed the employee in the particular place at the particular time when he was injured by some neutral force, meaning by 'neutral' neither personal to the plaintiff nor distinctly associated with the employment." 1 Larson, *Workmen's Compensation Law* § 650, at 3–5.

Colorado first applied "positional-risk" analysis in *Aetna Life Insurance v. Industrial Commission*, 81 Colo. 233, 254 P. 995 (1927). There, the court upheld an award of compensation to a farmhand who was struck by lightning while returning from working on a neighbor's farm. The "positional-risk" test was applied as follows:

"When one in the course of his employment is reasonably required to be at a particular place at a particular time and there meets with an accident, although one which any other person then and there present would have met with irrespective of his employment, that accident is one 'arising out of' the employment of the person so injured." 254 P. at 996.

Thus the Colorado Supreme Court was able to bridge the causation gap in cases of purely random or happenstance injuries to employees in order to extend worker's compensation to cases where the only connection between the job and the injury is that the employee would not have been at the place where lightning struck but for the job. This makes sense where the injury is not one intentionally inflicted by a job supervisor for personal reasons. Thus a worker struck by a falling sign or a runaway truck while on an errand for the employer certainly was intended to be covered in spite of the freakish, random nature of the accident.

The question here before me, however, does not involve a randomly injured victim, but a different issue: whether an employer or its supervisor should be allowed to hide behind the Act to evade liability for an intentional tort committed on an employee. Here the tort occurred, not at the plaintiff's usual workplace, while she was performing her teaching duties, but while she was at the superintendent's office to discuss her grievance regarding her future duties. It "arose out of" her action in tape recording her conversation with the superintendent, an act that was clearly not included in her job duties or authorized by her employer.

"It can readily be seen that the 'positional-risk' test provided substantially broader coverage of injuries than did the formerly applied increased-risk test." *Tolbert*, 621 F.Supp. at 1102. Yet, as observed in *Tolbert*, the Colorado courts on several occasions have departed from the "positional-risk" test to impose a higher standard of causal relationship to the employment as the reason for denying worker's compensation in assault cases.

For example, In *Industrial Commission v. Strome*, 107 Colo. 54, 108 P.2d 865 (1940), worker's compensation was denied to a claimant who had been struck on the head by a shovel wielded by a fellow employee. The court reasoned:

"Ordinarily assaults by co-employees cannot be considered as incidental to the employment and so an injury to an employee assaulted by a fellow workman does not generally arise 'out of the employment.'

. . . . .

Injuries resulting from an assault may, however, be found to arise out of or in the course of the employment where the assault is one which might be reasonably anticipated because of the general character of the work, or of the particular duties imposed on the workman. . . ." 108 P.2d at 805.

In *Strome*, there was a greater causal link to the employment than is present here, for Mr. Strome was struck by a shovel, a work tool, in the hands of a co-employee. Here, in contrast, the alleged assailant, Burks, did not wield a weapon provided by the employer.

Moreover, the employer in *Strome* reasonably could have anticipated that its shovels might be used in altercations between workmen. In *Wisdom*, 133 Colo. 266, 293 P.2d 967, the court stated:

"If an assault might reasonably be anticipated because of the general nature or character of the employment, then in some instances, controlled entirely by the facts presented, injuries received as a result thereof are compensable." Id. 293 P.2d at 968–69.

Yet here there is no indication that it was reasonably foreseeable to the district that its superintendent would assault a teacher, or that district officials would intentionally harass an employee.

Furthermore, I am unconvinced that the injuries alleged by the plaintiff are of the type intended to be covered by the Workmen's Compensation Act. "Worker's compensation was intended as a beneficient plan to provide financial help for workers who incur on-the-job injuries caused by job risks." *Tolbert*, 621 F.Supp. 1103. The factual situation presented here is analogous to the facts in *Tolbert* and *Bennett v. Furr's Cafeteria, Inc.*, 549 F.Supp. 887 (D.Colo.1982), where it was held that injuries inflicted by co-employees were not covered under the Act.

In *Tolbert*, the plaintiff, a secretary at Martin Marietta Aerospace, was assaulted and raped by a Martin Marietta janitor while on her way to lunch, on her own time but within the company's facility. There it was held that the plaintiff's tort claims against the company were not barred by the workers' compensation laws because her injuries did not arise out of her employment. Specifically, it was concluded that the nature of the plaintiff's claims was intensely personal rather than of the type one might expect to arise out of employment. Also, that opinion reasoned that "considering the policy and purpose of workers' compensation, the rape of a worker is simply not the type of injury intended

to be covered." *Id.* Here too, the torts of assault and outrageous conduct are personal in nature and not of the type one might expect to arise out of employment.

*Bennett v. Furr's Cafeteria, Inc., supra*, involved a management trainee's allegation that she had been sexually assaulted by her supervisor. The court held that the plaintiff's claims were not precluded by the Act, reasoning:

"[I]t would appear to lie outside the bounds of reason to propose that the sort of sexual assault and harassment heretofore described and the emotional trauma alleged to have been caused thereby result from risks inherent to the position of a 'management trainee.'" 549 F.Supp. at 890.

Similarly, it is difficult to imagine how the assault and other retaliatory conduct alleged by the instant plaintiff can be deemed to have resulted from risks inherent in employment as a school teacher.

True, it cannot be stated that courts never hold that assaults arise out of the injured party's employment. As Professor Larson observed, "[a]ssaults arise out of the employment either if the risk of assault is increased because of the nature or setting of the work, or if the assault was a quarrel having its origin in the work." 1 Larson, *supra*, § 11.00, at 3–161. Yet Professor Larson also acknowledged that recovery has been denied under workers' compensation statutes where the argument provoking the assault concerned a subject not strictly within the injured employee's duties. *Id.* § 11.14, at 3–207, 3–208. Here, the argument provoking the assault concerned the plaintiff's tape-recording of the conversation with Burks. As mentioned, the plaintiff's duties did not include tape-recording such conversations. For the reasons discussed above, I conclude that the plaintiff's alleged injuries did not arise out of her employment.[2] Therefore the defendants' motion based on the ground of pre-

2. In contrast, I conclude that the plaintiff's alleged injuries occurred in the course of her employment because she sustained the injuries during a work-related meeting with her superintendent. Plaintiff's job required her to meet with the defendant Burks to discuss her teaching duties and therefore her injuries were inflicted while she was "performing a duty she was employed to do."

emption by the worker's compensation statute must be denied.

### B. *Claim for Outrageous Conduct.*

Defendants Burks and Smith ask that the plaintiff's claim for outrageous conduct be dismissed on the ground that as a matter of law she has failed to state a claim that entitles her to relief.

Colorado first recognized the tort of outrageous conduct in *Rugg v. McCarty*, 173 Colo. 170, 476 P.2d 753 (1970). There, the Colorado Supreme Court adopted the following language from the *Restatement (Second) of Torts* § 46 (1965):

"Outrageous Conduct Causing Severe Emotional Distress

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Id.* 476 P.2d at 756.

The court went on to quote the *Restatement* definition of extreme and outrageous conduct:

"Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Id.*

The question of whether certain conduct is sufficiently outrageous is ordinarily a question for the jury. *Meiter v. Cavanaugh*, 40 Colo.App. 454, 580 P.2d 399, 401 (1978). However, "it is for the court to determine in the first instance, whether reasonable men could differ on the outrageousness issue." *Id. See Blackwell v. Del Bosco*, 35 Colo.App. 399, 536 P.2d 838 (1975), *aff'd*, 191 Colo. 344, 558 P.2d 563 (1976).

Plaintiff in *Rugg* had owed money to the defendants but had been making an effort to pay the debt. Her complaint alleged that the defendants repeatedly had harassed her with phone calls and letters demanding payment, and had asked her employer about garnishing her wages, even though the defendants did not have an outstanding judgment against her. She further alleged that the defendants' acts:

"were done *wilfully and wantonly* in disregard of her rights; and that the acts of the defendants were done *intentionally* with the *intention of causing [her] to suffer mental anguish, embarrassment, humiliation and extreme mental suffering.*" *Id.* at 173, 476 P.2d at 754 (emphasis in original).

The court held that these allegations stated a claim and reversed the trial court's order that had granted the defendants' motion to dismiss.

In *Meiter* the plaintiff had purchased a house from the defendant who had then belligerently refused to vacate the premises on the agreed date. Defendant's purportedly outrageous conduct included: (1) referring to the plaintiff as a "sick old woman;" and (2) implying that as an attorney, he would have some special influence in any judicial proceeding. The court affirmed the jury's verdict for the plaintiff on the outrageous conduct claim, reasoning that "the conduct here lies so near the bounds of indecency that the question of whether it is actionably outrageous was properly left to the jury." *Id.* 580 P.2d at 401.

Other cases where the Colorado Court of Appeals has upheld a jury finding of intentional infliction of emotional distress include *Enright v. Groves*, 39 Colo.App. 39, 560 P.2d 851 (1977), and *DeCicco v. Trinidad Area Health Association*, 40 Colo. App. 63, 573 P.2d 559 (1977). In *Enright*, a struggle ensued after the defendant police officer had wrongfully demanded to see the plaintiff's driver's license. The court found that the evidence of the officer's uncompromising conduct, and his handcuffing and manhandling of the defendant, sufficiently supported the jury's finding of intentional infliction of mental suffering.

In *DeCicco* the defendants had refused to furnish requested ambulance service to

the plaintiff's wife because her attending physician had recently resigned from the defendant hospital's staff. The court held that the jury's verdict for the plaintiff was reasonable because the defendants' action had delayed transporting a critically ill person to the hospital.

The cases in which Colorado courts have ruled that the plaintiff could not recover under a theory of outrageous conduct have generally involved milder misconduct on the part of the defendant. For example, in *Widdifield v. Robertshaw Controls Co.*, 671 P.2d 989 (Colo.App.1983), the court held that an employer's conduct in dismissing the plaintiff, a recent hiree, along with other employees of an office that was closed, did not state a claim for outrageous conduct.

In *Hansen v. Hansen*, 43 Colo.App. 525, 608 P.2d 364, 365–66 (1979), the court affirmed the trial court's action granting summary judgment to a defendant who had been sued by her son. The son had alleged that the defendant mother's failure to support him had caused him severe emotional harm. *See Deming v. Kellogg*, 41 Colo. App. 264, 583 P.2d 944, 945–56 (1978) (affirmed trial court's dismissal of outrageous conduct claim stemming from automobile accident); *First Nat'l Bank in Lamar v. Collins*, 44 Colo.App. 228, 616 P.2d 154, 156 (1980) (allegation that defendant had made misrepresentations did not state claim for intentional or reckless infliction of emotional distress); *see also Rawson v. Sears, Roebuck & Co.*, 530 F.Supp. 776 (D.Colo.1982) (Kane, J.) (employee's claim that employer maliciously fired him and would not allow him to "resign with dignity" did not state claim under Colorado law for outrageous conduct).

The purported acts of the defendants Burks and Smith are analogous to the fact patterns in cases where Colorado appellate courts have sustained claims for outrageous conduct. Plaintiff does not merely allege that the defendants fired her or that she relied on their misrepresentations. Rather, she asserts that the defendants engaged in activities designed for the purposes of retaliation and harassment.

True, " 'plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.' " *Meiter*, 580 P.2d at 401 (citing Prosser, *Insult and Outrage*, 44 Cal.L.Rev. 40 (1956)). Yet here, as in *Meiter* and most other cases where courts have declined to dismiss outrageous conduct claims, the plaintiff was subjected to more than mere unkind words and inconsiderate acts.

█ Besides the alleged retaliatory demotion and harassment of the plaintiff, there was the alleged assault by the defendant Burks. Plaintiff recalled the incident in her deposition:

"Q. Tell me about the end of the meeting when you were getting ready to leave. What happened?

A. Mr. Burks said, he kept glancing at the tape, and he said, 'And now I have to have that tape.'

And he got up and lunged for my purse. And I grabbed my purse, and I said 'No', and he grabbed me and started shaking me violently, and threw me to the ground.

Q. Go on.

A. ... I was very scared. He was on top of me. I couldn't move."

(Plaintiff's deposition, at 27.)

While the above-described conduct, by itself, might justify a reasonable person in concluding that Burks had acted "outrageously," the entire context of the conduct should be considered. As acknowledged by the court in *Zalnis v. Thoroughbred Datsun Car Co.*, 645 P.2d 292, 294 (Colo.App.1982):

"While it is true that 'the courts are more likely to find outrageous conduct in a series of incidents or in a "course of conduct" than in a single incident,' it is the totality of conduct that must be evaluated to determine whether outrageous conduct has occurred." *Id.* at 294.

Moreover, "[c]onduct, otherwise permissible, may become extreme and outrageous if it is an abuse by the actor of a position in which he has actual or apparent authority

over the other, or the power to affect the other's interests." *Zalnis, supra* at 294. *Restatement (Second) of Torts* § 46, Comment e. Here, both Burks and Smith were in positions of authority over the plaintiff.

For the reasons stated above, I conclude that the issue of whether the defendants' treatment of the plaintiff constituted "outrageous conduct" under Colorado law cannot be decided on the defendants' motion for summary judgment.

Accordingly, IT IS ORDERED that the motion for summary judgment of defendants Burks and Smith is denied.