In re QUESTION SUBMITTED BY THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT.

Deborah S. TOLBERT,
Plaintiff–Appellee,

v.

MARTIN MARIETTA CORPORATION,
a Maryland corporation,
Defendant–Appellant,

and

Arthur Benjamin Martinez, a/k/a A.B. Martinez, Third–Party Defendant.

No. 87SA127.

Supreme Court of Colorado,
En Banc.

June 20, 1988.

Feuer, Flossic & Kaplan, James A. Kaplan, and Jack M. Wesoky, Englewood, for plaintiff-appellee.

Holme Roberts & Owen and John R. Webb, Denver, for defendant-appellant.

VOLLACK, Justice.

In accordance with C.A.R. 21.1, the United States Court of Appeals for the Tenth Circuit has certified to the Supreme Court of Colorado a two-part question of law pertaining to a pending federal case:

Does the Workmen's Compensation Act of Colorado, sections 8–40–101 to 8–54–127, 3B C.R.S. (1986 & 1987 Supp.), provide an exclusive remedy for an employee against her employer:

(1) for injuries resulting from a sexual assault by a co-worker which was motivated by considerations neither personal to the injured employee nor distinctly associated with the employment; and

(2) when the employee has fixed hours and place of employment in a secure facility and the injury occurred while the employee was in her building of employment, but away from her work station, on her way to lunch in the employer's cafeteria?

This court has agreed to answer the interrogatory, and now responds to both parts of the question in the affirmative.

This question addresses the causal relationship between Martin Marietta's employment of the plaintiff-appellee, Deborah Tolbert, and the circumstances of the sexual assault against her. Our answers to the two-part question will determine whether the exclusivity provision [1] of the Colorado

---

1. Section 8–42–102 of the Act provides:

 **Liability of employer complying.** An employer who has complied with the provisions of articles 40 to 54 of this title, including the provisions relating to insurance, shall not be subject to the provisions of section 8–42–101; nor shall such employer or the insurance carrier, if any, insuring the employer's liability under said articles be subject to any other liability for the death of or personal injury to any employee, except as provided in said articles; and all causes of action, actions at law, suits in equity, proceedings, and statutory and common law rights and remedies for and on

Workmen's Compensation Act prohibits Tolbert's tort action against Martin Marietta, the defendant-appellant.

## I.

In March 1983 Deborah Tolbert was employed by Martin Marietta as an entry level professional. Arthur Martinez was a janitor, a coemployee at Martin Marietta. Tolbert was on her way to lunch in the company cafeteria on the Martin Marietta premises when she was attacked and raped by Martinez. Tolbert also filed a tort action in federal district court, alleging that Martin Marietta had negligently hired Martinez and negligently failed to keep the premises reasonably safe.

Martin Marietta filed a motion for summary judgment in federal district court, raising section 8–52–102(1)(c), 3B C.R.S. (1986), of the Colorado Workmen's Compensation Act (Act) as a complete defense. In its motion, Martin Marietta asserted that worker's compensation is Tolbert's exclusive remedy and as a result, her tort action is barred. After concluding that the material facts were no longer in dispute, the United States District Court denied Martin Marietta's summary judgment motion in *Tolbert v. Martin Marietta Corp.*, 621 F.Supp. 1099 (D.Colo.1985). The court did grant permission for Martin Marietta to file an interlocutory appeal with the Tenth Circuit Court of Appeals, pursuant to federal statute.[2] The two-part question set out above was certified to the Colorado Supreme Court from the Tenth Circuit Court of Appeals.

## II.

### A.

The federal district court found that there were no disputed issues of material fact. *Tolbert*, 621 F.Supp. at 1100. The Workmen's Compensation Act provides:

**8–52–102. Conditions of recovery.**

(1) The right to the compensation provided for in articles 40 to 54 of this title, in lieu of any other liability to any person for any personal injury or death resulting therefrom, shall obtain in all cases where the following conditions occur:

(a) Where, at the time of the injury, both employer and employee are subject to the provisions of said articles and where the employer has complied with the provisions thereof regarding insurance;

(b) Where, at the time of the injury, the employee is performing service arising out of and in the course of his employment;

(c) Where the injury or death is proximately caused by an injury or occupational disease *arising out of* and *in the course of* his employment and is not intentionally self-inflicted.

3B C.R.S. (1986) (emphasis added). In ruling on Martin Marietta's motion for summary judgment, the federal district court held that it was "undisputed that condition (a) is met, and condition (b) does not appear to be seriously disputed." 621 F.Supp. at 1100. Thus, the narrow issue of law presented here is whether the injury suffered by Tolbert "arose out of and in the course of" her employment, thus meeting the third requirement, section 8–52–102(1)(c).

Our response to the two-part question will determine whether recovery under the Workmen's Compensation Act is Tolbert's exclusive remedy, thereby barring her tort action in negligence. "Recovery under the Act is meant to be exclusive and to preclude employee tort actions against an em-

account of such death of or personal injury to any such employee and accruing to any person are abolished except as provided in said articles.

3B C.R.S. (1986).

**2.** 28 U.S.C. section 1292 (1982) provides in part:
(b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order....

ployer." *Kandt v. Evans,* 645 P.2d 1300, 1302 (Colo.1982); *see Calderon v. Martin Marietta Corp.,* 675 F.Supp. 1279, 1280 (D.Colo.1987). If we conclude that Tolbert's injury is not compensable under the Act, then her tort action against Martin Marietta is not barred.

## B.

The phrases "arising out of" and "in the course of" found in section 8–52–102(1)(c) are not synonymous, and a claimant must prove both requirements. *Industrial Comm'n v. London & Lancashire Indem. Co.,* 135 Colo. 372, 376, 311 P.2d 705, 707 (1957). The parties do not dispute that this incident occurred "in the course of" Tolbert's employment with Martin Marietta, so "arising out of" is the phrase at issue here.[3] *Tolbert,* 621 F.Supp. at 1100.

An accident "arises out of" employment when there is a causal connection between the work conditions and the injury. *Martin Marietta Corp. v. Faulk,* 158 Colo. 441, 407 P.2d 348 (1965); *State Comp. Ins. Fund v. Walter,* 143 Colo. 549, 354 P.2d 591 (1960). For an injury to be compensable under the Act, there must be a sufficient nexus between the employment and the injury. *Perry v. Crawford & Co.,* 677 P.2d 416 (Colo.App.1983). The determination of whether an employee's injuries arose out of an employment relationship depends largely on the facts presented in a particular case. *Bennett v. Furr's Cafeterias, Inc.,* 549 F.Supp. 887, 890 (D.Colo. 1982). "The totality of the circumstances must be examined in each case to see whether there is a sufficient nexus between the employment and the injury." *City & County of Denver School Dist. No. 1 v. Industrial Comm'n,* 196 Colo. 131, 133, 581 P.2d 1162, 1163 (1978); *Perry,* 677 P.2d at 418.

## C.

This nexus or causality requirement is subject to more than one definition. As the federal district court stated, the phrase "arising out of" has been interpreted "in a number of different ways" in various jurisdictions which "have developed different tests of causality." *Tolbert,* 621 F.Supp. at 1100. The court also rested its analysis on the observation that "Colorado courts have not consistently applied any single test to determine whether an assault by a co-employee arises out of the employment relationship." *Id.* at 1101. The issue becomes what test or standard to apply to this "arising out of" language of the Act.

This court has most frequently used the positional-risk or "but for" standard to define the "arising out of" language.[4]

> An important and growing number of courts are accepting the full implications of the positional-risk test: An injury *arises out of* the employment if it would not have occurred *but for* the fact that the conditions and obligations of the employment placed claimant in the position where he was injured.... This theory supports compensation, for example, in

---

3. The phrase "in the course of" refers to the time, place and circumstances under which the injury occurred. *Industrial Comm'n v. London & Lancashire Indem. Co.,* 135 Colo. 372, 376, 311 P.2d 705, 707 (1957); *Maintenance Mgmt. v. Tinkle,* 40 Colo.App. 80, 82, 570 P.2d 840, 842 (1977); *Deters v. Times Pub. Co.,* 38 Colo.App. 48, 51, 552 P.2d 1033, 1036 (1976).

4. Five different tests can be used in this analysis: peculiar-risk doctrine, increased-risk doctrine, actual-risk doctrine, positional-risk doctrine, and the proximate cause test. 1 Larson §§ 6.00, 6.20 to .60, at 3–1, 3–4 to –11. Prior to *Aetna,* Colorado courts have also applied the "increased-risk" test of causality, which calls for compensation *only if* the claimant's employment increased the claimant's risk of injury above the risk to which the general public is exposed. *See Industrial Comm'n v. Ernest Irvine, Inc.,* 72 Colo. 573, 212 P. 829 (1923).

> The hazard, out of which arose the injury which caused the death of Lewis, was not common to the general public; the injury would not have occurred but for his employment, and the act being performed by him was within the scope of his duties. He was doing the duty which he was employed to perform, hence received the injury "in the course of" the employment; a reasonable person familiar with the entire transaction on that evening would have contemplated the result as probable from the exposure occasioned by the nature of the employment, hence the injury "arose out of" the employment.

*Id.* at 580, 212 P. at 832.

cases of stray bullets, roving lunatics, and other situations in which the only connection of the employment with the injury is that its obligations placed the employee in the particular place at the particular time when he was injured by some neutral force, meaning by "neutral" neither personal to the claimant nor distinctly associated with the employment.

1 Larson, *Workmen's Compensation Law* § 6.50, at 3–6 (1985) (emphasis in original) (hereinafter 1 Larson); *Aetna Life Ins. Co. v. Industrial Comm'n*, 81 Colo. 233, 254 P. 95 (1927) (first application of the positional-risk doctrine in Colorado); *see also London Guar. & Accident Co. v. McCoy*, 97 Colo. 13, 45 P.2d 900 (1935); *Kitchens v. Department of Labor & Employment*, 29 Colo.App. 374, 486 P.2d 474 (1971). In *Aetna*, we used this definition of the positional-risk test:

> [W]hen one in the course of his employment is reasonably required to be at a particular place at a particular time and there meets with *an accident*, although one *which any other person then and there present would have met with irrespective of his employment*, that accident is one "arising out of" the employment of the person so injured.

81 Colo. at 236, 254 P.2d at 996 (emphasis added).[5]

■ If we conclude that the employee, under these facts, is eligible for compensation under the Act, then she is prohibited from maintaining a suit against the employer for alleged negligence by the employer related to an intentional assault by a coemployee.[6] "Cognizant of the Act's broad remedial objective, the Colorado courts have interpreted this standard of compensation to include injuries arising from the intentional acts of a co-employee, as long as the requisite degree of job relatedness is present." *Bennett v. Furr's Cafeterias, Inc.*, 549 F.Supp. 887, 890 (D.Colo. 1982) (footnote omitted). The positional-risk test, as applied by this court in the past, is the appropriate test in assessing the case before us now. The positional-risk test is formulated to assess whether there is a sufficient relationship between the employment and the injury to justify compensation under the Act. "Whether worker's compensation coverage is invoked as a defense by an employer, or as the basis of a claim by an employee, the test of applicability is the same. Compensation is to be awarded, and the tort remedy is abolished, if the statute's conditions are all met." *Kirk v. Smith*, 674 F.Supp. 803, 804 (D.Colo.1987). By reviewing the totality of the circumstances using this test, the act's intentional or non-intentional character alone is not dispositive. Rather, the "neutral force" provides the necessary distinction between conflicts imported into the work place from outside work, as opposed to a neutral force which would have happened to the employee who happened to be in that particular place at that particular time.

### III.

■ Recognizing that the unique facts of each case will determine whether the positional-risk test has been met, *City & County of Denver School District No. 1 v. Industrial Commission*, 196 Colo. 131, 133, 581 P.2d 1162, 1163 (1978), we turn to the facts of this case as summarized by the federal district court and agreed to by the

---

5. The word "accident" in the statute was replaced with the words "injury or occupational disease" before the facts in this case occurred. In 1975, the General Assembly amended section 8–52–102, replacing the word "accident" wherever it occurred with "injury" and explicitly including a reference to occupational diseases, which statutory provisions and court decisions had previously excluded from compensation under the definition of "accident." We find that these amendments had the effect of broadening the scope of compensable injuries under the Act.

*Kandt v. Evans*, 645 P.2d 1300, 1303 (Colo.1982) (citation omitted).

6. This court has already held that the Act covers intentional acts committed by co-employees. In *Kandt v. Evans*, 645 P.2d 1300 (Colo.1982), we held that "an employee's injuries from an assault by a co-employee are compensable under the Act, as long as they 'arise out of' the employment." *Id.* at 1303. *See also Ellis v. Rocky Mountain Empire Sports, Inc.*, 43 Colo.App. 166, 602 P.2d 895 (1979).

**22**

parties. To resolve the first part of the Tenth Circuit Court of Appeals' question, we must determine whether Tolbert's injuries "arose out of" her employment for purposes of the Workmen's Compensation Act, keeping in mind that there must be a causal connection between the work conditions and the injury. "The expression 'arising out of' refers to the *origin* or *cause* of the injury." *Deters v. Times Pub. Co.*, 38 Colo.App. 48, 51, 552 P.2d 1033, 1036 (1976) (emphasis in original). To arise out of employment, however, an injury "need not always be a direct result of an employment-related cause." *Irwin v. Industrial Comm'n*, 695 P.2d 763, 765 (Colo.App. 1984). This "but for" test supports compensation in cases in which "the only connection of the employment with the injury is that its obligations placed the employee in the particular place at the particular time when he was injured by some neutral force." 1 Larson § 6.50, at 3–6. A neutral force is one which is not personal to the victim, nor distinctly associated with the employment. *Id.*

■ Determination of the Act's coverage of assaults by co-workers requires the positional-risk analysis, as earlier adopted by this court in *Aetna.* This interpretation of the Act is supported by the rationale that "[i]nstead of being so placed by his duties as to receive the impact of a random bullet or a falling cornice, the claimant is so placed as to receive the impact of his co-worker's personality." 1 Larson § 11.16(a), at 3–239. Applying the positional-risk doctrine, the test is whether the employee, in the course of her employment, was reasonably required to be at a particular place at a particular time and there met with a "neutral force", meaning that any other person then and there present would have met with attack. *Aetna*, 81 Colo. at 235–36, 254 P.2d at 996. The "only connection" required between the employment and the injury is that the job "placed the employee in the particular *place* at the particular *time* when [s]he was injured by some *neutral force*, meaning by 'neutral' neither personal to the claimant nor distinctly associated with the employment." 1 Larson § 6.50, at 3–6 (emphasis added).

**A.**

Does the Workmen's Compensation Act of Colorado, sections 8–40–101 to 8–54–127, 3B C.R.S. (1986 & 1987 Supp.), provide an exclusive remedy for an employee against her employer:

(1) for injuries resulting from a sexual assault by a co-worker which was motivated by considerations neither personal to the injured employee nor distinctly associated with the employment?

■ As to the time element, it is evident that Tolbert's work obligations caused her to be present on the grounds of Martin Marietta. The mere fact that an employee is on lunch hour does not prohibit worker's compensation coverage, as long as the incident occurred within a time during which the worker is employed. "Courts generally have been liberal in protecting workers during the noon hour," as long as the worker was at a place where the worker may reasonably be, at a time during which the worker is employed, doing what he or she may reasonably do. *Industrial Comm'n v. Golden Cycle Corp.*, 126 Colo. 68, 71–72, 246 P.2d 902, 904 (1952) (claimant injured while "eating his lunch on the employer's premises at the noon hour" was doing so in the course of his employment); *City & County of Denver School Dist. No. 1 v. Industrial Comm'n*, 196 Colo. 131, 581 P.2d 1162 (1978) (injuries suffered by a teacher while driving to a restaurant to eat lunch are compensable because the teacher was required to return to school that afternoon and could not eat in the school cafeteria); *Perry v. Crawford & Co.*, 677 P.2d 416, 417 (Colo.App.1983) ("[A]n on-premises lunchtime injury.... generally comes within the scope of employment.").

■ The employee need not necessarily be engaged in the actual performance of work at the moment of injury in order to receive compensation. *University of Denver v. Nemeth*, 127 Colo. 385, 257 P.2d 423 (1953). Tolbert was also at a place where she "may reasonably be," on the premises of Martin Marietta during her lunch hour. Finally, she was doing what she "may rea-

sonably do": walking to the company cafeteria.

It arises out of the employment if it is connected with the nature, *conditions, operations or incidents of the employment....* "[N]o break in the employment is caused by the mere fact that the workman is ministering to his personal comforts or necessities, as by warming himself, or seeking shelter, or by leaving his work to relieve nature, or to procure drink, refreshments, food, or fresh air, or to rest in the shade."

*Golden Cycle Corp.*, 126 Colo. at 71–72, 246 P.2d at 904 (quoting 1 Honnold, Workmen's Compensation § 111, at 382) (emphasis added). An employee need not necessarily be engaged in the actual performance of work at the moment of the injury. *Packaging Corp. v. Roberts*, 169 Colo. 316, 455 P.2d 652 (1969). Clearly, this case meets the time requirement.[7]

### B.

The "place" element requires that the injury have occurred at a place where the worker may reasonably be. "Under even the broadest rule, the but-for test, it must be emphasized that the test is not 'but for the bare existence of the employment,' but rather 'but for the conditions and obligations of the employment.'" 1 Larson § 11.22, at 3–261. Tolbert's presence in the Martin Marietta building where the attack took place was a direct result of her employment. "But for" the conditions and obligations of her employment with Martin Marietta—being at work on the day in question and using the cafeteria provided by her employer—Tolbert would not have been present at this particular location, traveling to the company cafeteria, which caused her to be vulnerable to her attacker. An employee walking from a work station to the employer cafeteria is certainly in a place where a worker "may reasonably be at the time." The place requirement, therefore, is met.

### C.

The third requirement is that the injury must have been caused by a neutral force.

Wilful assaults upon the claimant, like injuries generally, can be divided into *three categories:* those that have some *inherent connection with the employment,* those that are *inherently private,* and those that are neither, and may therefore be called *"neutral."*

1 Larson § 11.31, at 3–275 (emphasis added). The first category, assaults which have an inherent connection with employment, are those in which a dispute arises out of "enforced contacts" which result from the duties of the job.[8] 1 Larson § 11.22, at 3–261. The second category, assaults which are inherently private, are those in which "'the animosity or dispute that culminates in an assault is imported into the employment from claimant's domestic or private life, and is not exacerbated by the employment.'" *Velasquez v.*

---

**7.** This court has quoted with approval the following passage regarding preparatory acts:

"The course of employment, for employees having a fixed time and place of work, embraces a reasonable interval before and after official working hours while the employee is on the premises engaged in preparatory or incidental acts, such as washing or changing his clothes. The rule is not limited to activities that are absolutely necessary; it is sufficient if they can be said to be reasonably incidental to the work."

*Divelbiss v. Industrial Comm'n,* 140 Colo. 452, 456, 344 P.2d 1084, 1086 (1959) (quoting 1 Larson § 21.60, at 313.) More recently, the court of appeals applied this section and noted that it has been modified and broadened. It now states that "[t]he rule is not confined to activities that are necessary," and no longer contains the phrase "such as washing or changing his clothes" or the word "absolutely." *Sieck v. Trueblood,* 29 Colo.App. 432, 435, 485 P.2d 134, 135 (1971). We believe that the same analysis is appropriately applied to the lunch hour incident in this case.

**8.** It is "universally agreed" that an assault is compensable if it grew out of an argument over performance of work, possession of work tools or equipment, delivery of a paycheck, quitting or being terminated, or mediating between quarreling coemployees. 1 Larson § 11.12, at 3–189 to –198. Further, even if the "subject of the dispute is unrelated to the work," injuries are compensable if work brought the employees together and "created the relations and conditions" resulting in the dispute. *Id.* at § 11.16(a), at 3–234.

*Industrial Comm'n,* 41 Colo.App. 201, 203, 581 P.2d 748, 749 (1978) (quoting 1 Larson § 11.21). Such assaults do " 'not arise out of the employment under any test.' " [9] *Id.*

The third category of neutral assaults includes "assaults which are in essence equivalent to blind or irrational forces, such as attacks by lunatics, drunks, small children, and other irresponsibles; completely unexplained assaults; and assaults by mistake." 1 Larson § 11.31, at 3–275. The characteristic of a neutral or unexplained assault is that "[n]othing connects it with the victim privately; neither can it be shown to have had a specific employment origin." *Id.* at 3–287. If an employee is exposed to the unexplained assault "because he is discharging his duties at that time and place," then the injuries are generally compensable.[10] *Id.* "A minority of jurisdictions are inclined to regard the neutral category as noncompensable, for want of affirmative proof of distinctive employment risk as the cause of the harm; but a growing majority, sometimes expressly applying the positional or but-for test, make awards for such injuries when sustained in the course of employment." 1 Larson § 11.31, at 3–275 to –276. "Under the 'but-for test,' assaults by co-workers are compensable as long as they are not motivated by personal vengeance stemming from contact with the employee outside of the employment." *Crotty v. Driver Harris Co.,* 49 N.J.Super. 60, 73, 139 A.2d 126, 134 (1958), *aff'g* 45 N.J.Super. 75, 131 A.2d 578 (1957). ("An employee who is injured in the course of his work by the anti-social, viz., criminal act of a fellow employee, clearly sustains an injury which arises out of the employment." 45 N.J.Super. 75, 86–87, 131 A.2d 578, 585.)

The parties agree that there was no personal or private motivation for Martinez' attack and rape of Tolbert. 621 F.Supp. at 1102. The rape was not directly associated with Tolbert's employment and there was no indication that Martinez had specifically selected Tolbert as a victim. Prior to the assault, Tolbert and Martinez "had only the slightest contacts, and those were only at Martin Marietta." *Id.* The federal district court held: "There is nothing to indicate that any other woman—whether or not a Martin employee—who happened to be in the same area at the time of the attack would not have become the victim." *Id.*

The parties agree that Tolbert was not on duty when attacked; she was on her lunch hour. She was not at her assigned work place, nor was she at a place where her job expressly required her to be at that moment. *Id.* Tolbert was on Martin Marietta premises walking from her work station to the employee cafeteria at the time of her assault. The parties agree that there are no facts or circumstances "tending to show that the attack was directed against [Tolbert] as opposed to any other woman who might have been present at the place and time." *Tolbert,* 621 F.Supp. at 1102. The undisputed facts and circumstances surrounding this attack meet the definition of a "neutral" attack.

This distinction is supported by the denial of compensation in *Velasquez v. Industrial Commission,* 41 Colo.App. 201, 581 P.2d 748 (1978). In *Velasquez,* the court of appeals upheld the commission's denial of compensation to two claimants shot by a co-employee whose anger was specifically directed at them. "[T]he shooting could

9. Inherently private assaults typically involve disputes over spouses. Compensation is usually denied "when the fight was caused by a quarrel between the employee's wives, when the argument was concerned with the assailant's misconduct with another employee's wife, or the employee's misconduct with the assailant's wife, and when the assault was occasioned by a remark to the co-employee's wife." 1 Larson § 11.21, at 3–254 to –255 (footnotes omitted).

10. Larson explains the concept of a neutral attack with this analogy:

There is a marked distinction between the holdup in which the robber says to himself, "I am going to track down Henry Davis wherever he may be and steal the gold watch which I know he has," and the holdup in which the robber says, "I am going to rob whoever happens to be on duty as night watchman at the Consolidated Lumber Company, or whoever happens to come down the dark, hidden path from the factory to the rear gate." The latter is not really personal to this victim at all. 1 Larson § 11.11(b), at 3–178 to –179 (footnotes omitted).

have happened at any other time or place, wherever and whenever, the co-employee happened to find the petitioners." 41 Colo. App. at 202, 581 P.2d at 749; *see also Irwin v. Industrial Comm'n,* 695 P.2d at 766. *Compare In re McLaughlin,* 728 P.2d 337, 340 (Colo.App.1986) (An employee's widow is entitled to benefits when her husband and a co-worker were killed by the co-worker's husband. "His employment there created and sustained the co-worker relationship" and the attack was not imported to work from the employee's private life. *Id.*).

The New Jersey Superior Court reached the same conclusion in *Crotty v. Driver Harris Co.,* 49 N.J.Super. 60, 139 A.2d 126 (1958). In *Crotty,* the claimant's decedent was robbed and murdered by a co-worker. The murder occurred on an afternoon when both men were at work, in a brick shed adjoining the building where both worked. Crotty and his attacker frequently went to the shed with fellow employees to smoke cigarettes and talk. The court held that the accident arose out of Crotty's employment.

> While *the employment* may not have been the proximate cause of the fatal assault on Crotty, it assuredly *was a contributing factor, providing the murderer with the place and opportunity to assault and rob his victim.* But for the employment, the assault and death would not have occurred when it did.

*Id.* at 72, 139 A.2d at 133 (emphasis added). The court also held that "[u]nder the 'but-for' test, assaults by co-workers are compensable as long as they are not motivated by personal vengeance stemming from contact with the employee outside of the employment." *Id.* at 73, 139 A.2d at 134.[11]

Because the time and place requirements are established, and the assault was "neutral" in the sense that it was not specific to Tolbert, we conclude that the particular facts of this case establish that this injury arose out of Ms. Tolbert's employment. We therefore answer "yes" to the first part of the question of law posed by the Tenth Circuit Court of Appeals.

## IV.

Does the Workmen's Compensation Act of Colorado, sections 8–40–101 to 8–54–127, 3B C.R.S. (1986 & 1987 Supp.), provide an exclusive remedy for an employee against her employer:

(2) when the employee has fixed hours and place of employment in a secure facility and the injury occurred while the employee was in her building of employment, but away from her work station, on her way to lunch in the employer's cafeteria?

 To resolve the second part of the Tenth Circuit Court of Appeals' question, we must decide whether Tolbert's injuries "arose out of" her employment due to the fact that Tolbert had fixed hours and a fixed place of employment, and the assault occurred while she was in a Martin Marietta building, away from her work station, on her way to eat lunch in the employer's cafeteria.

The same three-part positional-risk test must be applied. The "fixed hours" aspect of Tolbert's employment establishes that Tolbert would not have been present at this time but for the conditions and obligations of her work. As in *School District No. 1,* 196 Colo. at 133, 581 P.2d at 1163, Tolbert was free to leave her work area during the lunch hour, but was expected to return after lunch. In this case Tolbert stayed on her employer's premises during lunch hour, thus meeting the time requirement.

---

11. In *University of Denver v. Nemeth,* 127 Colo. 385, 257 P.2d 423 (1953), we cited with approval the decision of the Kansas Supreme Court in *Thomas v. Proctor & Gamble Manufacturing Co.,* 104 Kan. 432, 179 P. 372 (1919). In *Thomas,* an employee was injured when she fell from a company truck during her lunch hour. During lunch, she did not get paid. She "was at liberty to leave the premises, but she remained there." 127 Colo. at 391–92, 25 P.2d at 427. This court approved of Kansas' conclusion that the claimant's injury arose from her employment, based on those facts. " '[T]he court is of the opinion that her injury may be regarded, not only as having occurred in the course of her employment, but as having arisen out of it.' " 127 Colo. at 392, 257 P.2d at 427 (quoting *Thomas,* 104 Kan. at 439, 179 P. at 376).

The fact that she remained on Martin Marietta premises creates another link between the employment and the injury, an additional factor that was not present in *School District No. 1.* Tolbert was on Martin Marietta premises walking to the employee cafeteria, which is a fringe benefit provided by Martin Marietta to its employees. These facts establish that the conditions and obligations of Tolbert's employment caused her to be at this particular place at this time.

As to the requirement that an attack be "neutral" to be compensable, the same test and analysis found in section III.C. applies. We have already concluded that the facts and circumstances of the attack, as well as the findings of fact by the federal district court, established that this attack was "neutral." For these reasons, we conclude that the facts presented in the second part of the question also establish that Tolbert's injury arose out of her employment.[12] We answer in the affirmative.

■ We recognize that this ruling may seem to produce an unfair result, in the respect that Tolbert is now barred from bringing a civil action against Martin Marietta. While not unmindful of the dilemma, it must be noted that "[t]he Workmen's Compensation Act should be given a liberal construction because its purpose is highly remedial and beneficent." *Martin Marietta Corp. v. Faulk,* 158 Colo. 441, 444, 407 P.2d 348, 349 (1965). We agree with New Jersey's response to this issue: "Even though in this case the injured employee is resisting compensability, presumably in order to obtain a larger recovery in a civil action, we are bound by the principle requiring liberal interpretation of the Workmen's Compensation Act in order to afford a certain remedy. 'Consistency requires us to use the same legal yardstick....' *Brooks v. Dee Realty Co.,* 72 N.J.Super. 499, 508, 178 A.2d 644 (1962)." *Doe v. St. Michael's Medical Center,* 184 N.J.Super. 1, 4, 445 A.2d 40, 42 (1982). In keeping with the broad underlying policies and the remedial nature of the Act, we answer both parts of the interrogatory in the affirmative.

---

12. In the earlier cases of *Rocky Mountain Fuel Co. v. Kruzic,* 94 Colo. 398, 30 P.2d 868 (1934), *Industrial Commission v. Strome,* 107 Colo. 54, 108 P.2d 865 (1940), and *Wisdom v. Industrial Commission,* 133 Colo. 266, 263 P.2d 967 (1956), we came to different conclusions. In *Rocky Mountain Fuel Co. v. Kruzic,* a fellow employee shot the claimant at work for no apparent reason. For lack of evidence, the court upheld denial of benefits under the peculiar-risk test. 94 Colo. at 401, 30 P.2d at 869. In *Strome,* a claimant was struck with a shovel by a co-worker described as "an infuriated personal antagonist." *Id.* 107 Colo. at 56, 108 P.2d at 866. The court applied the peculiar-risk test, concluding that the claimant had not proven a causal connection between the employment and the accident or injury. *Id.* at 56, 108 P.2d at 866 (applying *Rocky Mountain Fuel Co. v. Kruzic,* 94 Colo. 398, 30 P.2d 868 (1934)). The facts of *Strome* are distinguishable because in *Strome,* the attacking co-worker individually sought out the particular victim-claimant; it was a personal dispute between the two co-workers. In *Wisdom,* 133 Colo. 266, 263 P.2d 967 (1956), we applied the peculiar-risk test from *Strome* and held that injuries resulting from a fight between two co-workers were not compensable.

As the leading authority in this field has correctly noted, *Rocky Mountain Fuel Co. v. Kruzic* "is of dubious value now in indicating the general causation principles in force in Colorado, in view of the avowed adoption of the positional-risk test in the case of [*London Guarantee & Accident Co. v. McCoy,* 97 Colo. 13, 45 P.2d 900 (1935) ]." 1 Larson § 11.33, at 3–294. We no longer apply the peculiar-risk test, and instead hold that the positional-risk or "but for" test must be applied to the totality of the circumstances.