**PORTOFINO APARTMENTS and American Employers Insurance Company, Petitioners,**

v.

**The INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE OF COLORADO; Thomas E. Maloney; and Director, Division of Labor, Department of Labor and Employment, Respondents.**

**No. 89CA0648.**

Colorado Court of Appeals, Div. III.

Feb. 22, 1990.

Clifton & Hemphill, P.C., Richard A. Bovarnick, Denver, for petitioners.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Paul H. Chan, Asst. Atty. Gen., Denver, for respondents.

Opinion by Judge TURSI.

Portofino Apartments and American Employers Insurance Company (petitioners) seek review of a final order of the Industrial Claim Appeals Office (Panel) which determined that the death of Thomas E. Maloney arose out of and in the course of his employment and, since he was without dependents, ordered petitioners to pay $15,-000 to the Subsequent Injury Fund (the Fund). We affirm.

Initially, petitioners contend that the Panel erred in holding that Maloney's death arose out of and in the course of his employment. We disagree.

This matter was submitted to an Administrative Law Judge (ALJ) upon a stipulation that contained admitted facts, as well as contested facts by proffers of the testimony that certain witnesses would give if called to testify. The stipulation establishes that on the night of his death, Maloney was the "on-call" maintenance employee of the Portofino Apartments and was called to repair a leak in an apartment.

While investigating the leak, Maloney and his supervisor sought to enter an apartment located on the floor above the apartment with the leak. The resident of that apartment and Maloney became involved in a verbal argument. Later, the resident left his apartment carrying a gun, another confrontation occurred, and the resident shot and fatally wounded Maloney.

The record also contains evidence from which it could be concluded that Maloney was intoxicated at the time of his death.

The ALJ found that the fatal assault on Maloney occurred during the course of his employment and that his death was connected to his employment. The ALJ also concluded that the provisions of

§ 8–52–104(1)(c), C.R.S. (1986 Repl.Vol. 3B), which provide for a fifty percent reduction in compensation when a worker is intoxicated, are inapplicable to § 8–51–106(1)(b), C.R.S. (1986 Repl.Vol. 3B) which provides for a $15,000 payment to the Fund. The Panel affirmed.

■ To determine whether Maloney's death arose out of his employment, the Panel applied the "positional risk" test set forth in *Tolbert v. Martin Marietta Corp.,* 759 P.2d 17 (Colo.1988). We agree with the Panel's conclusion that the "motivation for the assault here arose out of Maloney's employment and his death was thus, inherently connected to the employment." Furthermore, the Panel also correctly concluded Maloney was "in the course of" his employment because he was at a place where he might reasonably be, at a time when he was employed doing what he might reasonably do. *See Tolbert v. Martin Marietta Corp., supra; Ramsdell v. Horn,* 781 P.2d 150 (Colo.App.1989). *See also Banks v. Industrial Claim Appeals Office* (Colo.App. No. 89CA0301, January 18, 1990).

■ Petitioners also contend that the Panel erred in its conclusion that § 8–52–104(1)(c) does not require reduction of the $15,000 payment to the Fund by fifty percent because of Maloney's intoxication. We disagree.

Section 8–52–104(1)(c), as applicable here, provided that compensation as provided for in pertinent parts of the Workmen's Compensation Act shall be reduced fifty percent if "injury results from the intoxication of the employee."

Section 8–51–106(1)(b), as applicable here, provided that:

"For every compensable injury resulting in death wherein there are no persons either wholly or partially dependent upon the deceased, the employer or his insurance carrier, if any, *shall pay to the division the sum of fifteen thousand dollars,* to be deposited with the state treasurer, as custodian, into the subsequent injury fund." (emphasis supplied)

The Division of Labor and the Industrial Claims Appeals Office construe the payment under § 8–51–106(1)(b) to be a tax imposed upon the employer or its carrier, as the case may be, for the purpose of funding the subsequent injury fund.

Thus, the assessment of $15,000 was not a benefit designed to compensate a claimant or his dependent for industrial loss but rather it was the legislatively directed method to fund the subsequent injury fund. On the basis of the administrative ruling, the Panel concluded that § 8–52–104(1)(c), allowing for reduction of compensation, did not apply. We find this construction of the statutes to be persuasive.

■ In situations such as this, deference is to be given to the construction of statutes by administrative agencies in charge of their application. *See City & County of Denver v. Industrial Commission,* 690 P.2d 199 (Colo.1984); *Travelers Indemnity Co. v. Barnes,* 191 Colo. 278, 552 P.2d 300 (1976).

■ Inasmuch as the apparent intent of the General Assembly in creating the subsequent injury fund was to insure a solvent fund to protect both employers and employees in situations wherein there is a resultant total permanent disability because of subsequent injury, it becomes our obligation to construe liberally the provisions, terms, phrases, and expressions used in the pertinent statute in order that this true intent and meaning of the General Assembly may be fully carried forth. *See* § 2–4–212, C.R.S. (1980 Repl.Vol. 1B).

Order affirmed.

METZGER and CRISWELL, JJ., concur.