**TRIAD PAINTING COMPANY and State Compensation Insurance Authority, Petitioners,**

v.

**Roger L. BLAIR and the Industrial Claim Appeals Office, Respondents.**

**No. 90SC383.**

Supreme Court of Colorado, En Banc.

June 10, 1991.

Paul Tochtrop, Denver, for petitioners.

Ozer, Trueax & Kullman, P.C., Ronald M. Coffee, Colorado Springs, for respondent Roger L. Blair.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Paul H. Chan, Asst. Atty. Gen., Denver, for respondent The Indus. Claim Appeals Office.

Justice LOHR delivered the Opinion of the Court.

We granted certiorari to review the Colorado Court of Appeals' judgment in *Blair v. The Industrial Claim Appeals Office*, No. 89CA1222 (May 3, 1990) (unpublished opinion). The court of appeals reversed an administrative order denying workers' compensation benefits for an injury incurred by Roger L. Blair in an altercation with a job site supervisor. The court of appeals held that an injury resulting from assault is compensable if the dispute was related to work conditions. The court further held that identification of the claimant as the "initial aggressor" does not lead to a denial of benefits. We affirm the judgment of the court of appeals.

I.

Roger L. Blair was employed as a painter by Triad Painting Company (Triad), a subcontractor of Bassett Construction Company (Bassett). On the date of his injury, December 19, 1985, Blair was painting at a job site supervised by Doug Brown, an employee of Bassett. In ensuing proceedings on Blair's claim for workers' compensation, an administrative law judge (ALJ) for the Department of Labor found Brown to be a credible witness and therefore adopted his version of the events that led

to Blair's injury. Brown described the incident as follows.[1]

Brown overheard Blair voicing complaints about the job. Brown, seeking to avert the potential for a mechanic's lien, approached Blair and asked him if Triad was paying him. Blair said he was being paid, but indicated that he was angry over lack of overtime. Brown remarked that Blair did not even show up during regular hours, then returned to his office. As Blair gathered his tools to leave, he continued to voice loud complaints, now directed at Brown. Blair's comments included name calling and profanity.

Brown again left his office to confront Blair. Upon seeing Brown, Blair set down buckets he was carrying but continued to hold a roller pole, used in painting. Brown approached him "face-to-face," the two stood looking at each other for a time, then Brown turned to walk away. Blair mumbled something, and Brown kicked over one of the buckets. Blair made a quick movement. Brown, thinking Blair intended to strike him with the pole, grabbed Blair by the collar and threw him to the floor. Blair rose swinging. Brown again threw him to the floor, ending the physical altercation.

Blair allegedly sustained injuries to his ribs and lower back that have made his return to work impossible. In May 1986, he filed for workers' compensation. Included in the evidence before the ALJ was testimony by a psychologist who had examined Blair to evaluate his level of pain. The psychologist testified that in his opinion, Blair exaggerated his degree of pain. The psychologist further testified that tests administered during his one and one-half hour evaluation of Blair suggested a tendency by Blair "to bend the facts and rules to fit his situation to his benefit," and that Blair's test results indicated a long-standing personality disorder.

The ALJ found that the altercation between Blair and Brown "was provoked by the loud and obnoxious behavior of [Blair] toward Doug Brown," and "that any injuries [Blair] sustained were caused by his longstanding personality disorder, and did not arise out of and within the course and scope of his employment." The ALJ therefore denied Blair's claim. The Industrial Claim Appeals Panel affirmed after concluding that the "factual determination" by the ALJ was supported by "substantial evidence."[2] The court of appeals reversed, holding that as a matter of law, injuries resulting from a dispute over work conditions are compensable and that such injuries are not rendered non-compensable simply because the claimant was the "initial aggressor." *Blair*, No. 89CA1222, slip op. at 1.[3]

Triad and its workers' compensation insurer, State Compensation Insurance Authority[4] (collectively, the "employer group"), dispute the holding of the court of appeals. The employer group asserts that when a claimant sustains injuries in an altercation with his job site supervisor in which the claimant is the initial aggressor, the injuries are not compensable under the workers' compensation laws. The employer group relies on language in the relevant statutes in advancing two arguments in support of this assertion: (1) injuries sustained by the "initial aggressor" in an al-

1. Tim Padilla, a carpenter working for Bassett, offered testimony consistent with that of Brown. The ALJ found that "the testimony of the witnesses Doug Brown and Tim Padilla is more credible than the testimony of [Blair]" and therefore concluded that "this altercation occurred as these witnesses described it."

2. The Industrial Claim Appeals Panel stated, "[a]s we read the ALJ's order here, she has found that it was the 'obnoxious' nature of the claimant's behavior, and not a disagreement about work-related matters, which resulted in a physical altercation."

3. It is not clear that Blair can be fairly characterized as the initial aggressor under circumstances where physical contact was first made by the supervisor, Brown. Because we ultimately conclude that status as the initial aggressor does not preclude workers' compensation recovery, it is unnecessary to determine whether Blair is accurately characterized as the initial aggressor.

4. State Compensation Insurance Authority was renamed Colorado Compensation Insurance Authority by § 8–45–123, 3B C.R.S. (1990 Supp.). We use the former name, appearing in the record and briefs in this matter.

tercation do not arise out of and in the course of the claimant's employment, and (2) the injuries sustained by Blair are the expected result of his aggressive action and therefore are intentionally self-inflicted. As a threshold issue, we consider whether the ALJ erred in concluding that Blair's injuries did not arise out of and within the course and scope of his employment because they were caused by his longstanding personality disorder. Determining that the ALJ's conclusion is not legally supportable, we then address the employer group's contentions that workers' compensation is nevertheless precluded because Blair was the initial aggressor.

## II.

### A.

The Workers' Compensation Act of Colorado, articles 40 to 47 of title 8, 3B C.R.S. (1990 Supp.), provides exclusive remedies for compensation of an employee by an employer for work-related injury. § 8–41–102, 3B C.R.S. (1990 Supp.); *see, e.g., Popovich v. Irlando*, 811 P.2d 379, 382 (Colo.1991); *Curtiss v. GSX Corp. of Colorado*, 774 P.2d 873, 874 (Colo.1989); *Kandt v. Evans*, 645 P.2d 1300, 1302 (Colo.1982). A right to recovery under the Workers' Compensation Act is conditioned on a finding that the injury occurred while the claimant was "performing service arising out of and in the course of the employee's employment," § 8–41–301(1)(b), and that "the injury ... is proximately caused by an injury ... arising out of and in the course of the employee's employment," § 8–41–301(1)(c).[5] We have held that "arising out of" and "in the course of" employ-

ment comprise two separate requirements. *Industrial Comm'n v. London & Lancashire Indemnity Co.*, 135 Colo. 372, 376, 311 P.2d 705, 707 (1957); *accord Popovich*, 811 P.2d at 383; *Tolbert v. Martin Marietta Corp.*, 759 P.2d 17, 20 (Colo.1988).[6]

"The phrase 'in the course of' refers to the time, place and circumstances under which the injury occurred." *Tolbert*, 759 P.2d at 20 n. 3; *accord London & Lancashire*, 135 Colo. at 376, 311 P.2d at 707. "The 'course of employment' requirement is satisfied when it is shown that the injury occurred within the time and place limits of the employment relation and during an activity that had some connection with the employee's job related functions." *Popovich*, 811 P.2d at 383. The parties do not dispute that Blair's injury occurred at the job site, during working hours, while he was employed, and while he was gathering his tools after completion of a job assignment. These facts establish that the injury occurred in the course of Blair's employment. Thus, the focus of our inquiry is whether Blair's injury arose out of his employment.

The phrase "arising out of" is narrower than the phrase "in the course of." *Popovich*, 811 P.2d at 383. An accident "arises out of" employment when there is a causal relationship between the employment and the injury. *London & Lancashire*, 135 Colo. at 376, 311 P.2d at 707; *accord Tolbert*, 759 P.2d at 20. We recently elaborated upon that test in *Popovich*, stating that "[a]n injury ... 'arises out of' employment when it has its origin in an employee's work-related functions and is sufficiently related thereto as to be considered part of the employee's service to

---

**5.** The Workers' Compensation Act of Colorado provides for compensation for personal injury "in all cases where the following conditions occur":

(a) Where, at the time of the injury, both employer and employee are subject to the provisions of said articles [40 to 47 of title 8] and where the employer has complied with the provisions thereof regarding insurance;

(b) Where, at the time of the injury, the employee is performing service arising out of and in the course of the employee's employment;

(c) Where the injury or death is proximately caused by an injury or occupational disease arising out of and in the course of the employee's employment and is not intentionally self-inflicted.

§ 8–41–301(1), 3B C.R.S. (1990 Supp.). Prior to 1990 essentially identical statutory language was codified as § 8–52–102(1), 3B C.R.S. (1986). Because no relevant difference exists in the statutory language, we cite to the current statute for convenience in reference.

**6.** *Tolbert* has been cited in some cases as *In re Question Submitted by the U.S. Court of Appeals.*

the employer in connection with the contract of employment." *Popovich*, 811 P.2d at 383.

Blair's injuries are not rendered noncompensable for failure to satisfy the "arising out of employment" requirement simply because they were caused by an intentional act of a supervisor. We held in *Kandt* that workers' compensation provides the exclusive remedy for an employee injured by an intentional act of a co-employee when both were acting in the course of their employment. 645 P.2d at 1304–05. We considered this to be "consistent with the aim of workmen's compensation schemes to spread the cost of hazards of the workplace, one of which is intentional interference with an employee's legal interests by a fellow employee." *Id.* at 1305. We conclude that these considerations are equally applicable to the situation present here, in which the supervisor of the job on which Blair was working was employed by the general contractor, Bassett, rather than the subcontractor, Triad, which employed Blair.

■ We recognized in *Tolbert* that for the purpose of the "arising out of employment" requirement of the Workers' Compensation Act, assaults upon employees can be divided into three categories: (1) those with an "inherent connection" to employment such as a dispute over performance, pay or termination; (2) those stemming from "inherently private" disputes imported into the employment from the claimant's domestic or private life and not exacerbated by the employment; and (3) those resulting from a "neutral force" such as random assaults. *Tolbert*, 759 P.2d at 23–24; *accord Banks v. Industrial Claim Appeals Office*, 794 P.2d 1062, 1064 (Colo.App.1990). We noted that "[i]t is 'universally agreed' that an assault is compensable if it grew out of an argument over performance of work, possession of work tools or equipment, delivery of a paycheck, quitting or being terminated, or mediating between quarreling coemployees." *Tolbert*, 759 P.2d at 23 n. 8 (citing 1 Larson, *Workmen's Compensation Law* § 11.12 (1985)); *see, e.g., Banks*, 794 P.2d at 1065 (injury sus-

tained in fight with co-employee over reporting of theft from the workplace has a substantial connection with employment conditions and therefore is compensable); *Alpine Roofing Company v. Dalton*, 36 Colo.App. 315, 318, 539 P.2d 487, 489 (1975) (injury sustained in fight that erupted between claimant and supervisor after claimant was fired is compensable); *Springston v. IML Freight, Inc.*, 10 Kan.App.2d 501, 704 P.2d 394, 397 (1985) (injury sustained in "scuffle" caused by a dispute over job conditions "arose out of the claimant's employment"); *Cyrus v. Vierson & Cochran, Inc.*, 631 P.2d 1349, 1352 (Okl.App.1981) (injury sustained in fight that occurred after claimant was accused of stealing from the job site held compensable). In *Popovich* we distinguished employment-related torts from private torts, stating "[i]nherently employment-related torts are those that 'have an inherent connection with employment' and emanate from 'the duties of the job,' while inherently private torts are those that originate in the private affairs of the claimant and tortfeasor and are unrelated to their respective employment functions." *Popovich*, 811 P.2d at 384 (quoting *Tolbert*, 759 P.2d at 23). By definition, inherently private torts cannot be considered to "arise out of employment" and therefore injuries resulting from such torts are not compensable by workers' compensation. *Popovich*, 811 P.2d at 384.[7]

■ The ALJ found that the altercation between Blair and Brown began with an exchange of words concerning overtime. Brown initially confronted Blair after overhearing his complaints and becoming concerned that a mechanic's lien could result if the subcontractor, Triad, was not paying Blair. Thus, the entire focus of the dispute was related to work conditions. The ALJ found and concluded that the incident "was provoked by the loud and obnoxious behavior of [Blair] toward Doug Brown," and "that any injuries [Blair] sustained were caused by his long-standing personality disorder, and did not arise out of and within the course and scope of his employment."

---

7. The third category of assaults described in *Tolbert*, those resulting from a neutral force, is

clearly inapplicable to the facts of the present case.

The Industrial Claim Appeals Panel characterized the ALJ's order as based on a factual finding "that it was the 'obnoxious' nature of [Blair's] behavior, and not a disagreement about work-related matters, which resulted in a physical altercation."

█ It is well established that the determination of whether an injury arises out of employment is fact specific and is to be resolved by examining the totality of the circumstances. *E.g., Tolbert,* 759 P.2d at 20; *City of Denver School Dist. No. 1 v. Industrial Comm'n of Colorado,* 196 Colo. 131, 133, 581 P.2d 1162, 1163 (1978). The ALJ's order, however, is ultimately grounded on the legal conclusion that based on her factual findings, Blair's injuries did not arise out of his employment. This legal conclusion is inconsistent with *Popovich* and the prior cases on which it relied in determining whether an injury arises out of employment. The fact that a claimant may overreact to an adverse condition of employment, or that the overreaction may stem from some unusual quality of the claimant's personality, does not alter the fact that the subject of that reaction had an inherent connection with employment. Thus, the court of appeals properly reversed the determination of the Industrial Claim Appeals Panel that Blair's injuries did not arise out of his employment, unless the employer group's arguments that Blair's injuries are nevertheless noncompensable either because he was the initial aggressor or because the injuries were self-inflicted dictate a contrary result.

### B.

█ A question that arises in work-related assaults is whether compensation should be denied the "initial aggressor." *See* 1 Larson, *Workmen's Compensation Law* § 11.15(a) (1990). Jurisdictions that recognize the "initial aggressor defense" deny workers' compensation to the party who initiates the physical altercation despite the fact that the topic of the dispute is work-related. *Id.* One view is that the defense operates to negate the claim that the injury arose out of the employment. *Id.* Instead, the injury is considered to arise out of the party's act of aggression. *Id.*

In the absence of express statutory authorization, a majority of jurisdictions have rejected the "initial aggressor" defense. Larson, § 11.15(a); *see, e.g., Springston,* 704 P.2d at 398; *Geeslin v. Workmen's Compensation Commissioner,* 294 S.E.2d 150, 152–56 (W.Va.1982). The Kansas court of appeals summarized the bases given for rejection of the defense as follows:

"that the aggression defense does not appear in the statute; that it is a fault-based concept borrowed from tort law and out of place in compensation law; that the chain of causation is not necessarily broken by the fact of striking the first blow if the episode originated in the employment; that the sole contact between the disputants was employment related; and that disapproval of an employee's misconduct is no ground for frustrating the main purpose of workmen's compensation, which is to prevent dependency of the claimant and his family."

*Springston,* 704 P.2d at 398 (quoting 1 Larson, § 11.15(c) (1985)). The West Virginia Supreme Court of Appeals rejected the defense, considering it a "judicially created bar to recovery imposed upon an entirely statutory remedial scheme." *Geeslin,* 294 S.E.2d at 152. That court also noted the difficulty in characterizing one of the participants as the initial aggressor and the other as the innocent victim when faced with an escalating dispute that culminates in physical violence—a difficulty illustrated by the facts of the case now before us. *Id.* at 153.

Some states recognizing an "aggressor" defense to workers' compensation claims have relied on specific statutory language not present in the Workers' Compensation Act of Colorado. Thus, the North Carolina act, which exempts from compensation injuries resulting from the claimant's " 'willful intention to injure or kill himself *or another,*' " was interpreted to provide an aggressor defense. *Rorie v. Holly Farms Poultry Co.,* 306 N.C. 706, 295 S.E.2d 458, 460 (1982) (quoting N.C.Gen.Stat.

§ 97–12(3)) (emphasis added). An Oregon appellate court recognized the addition of the aggressor defense to the Oregon act when it was amended to exclude from the definition of "compensable injury" an " 'injury to any active participant in assaults or combats which are not connected to the *job assignment* and which *amount to a deviation from customary duties.*' " *Kessen v. Boise Cascade Corp.*, 71 Or.App. 545, 693 P.2d 52, 53 (1984) (quoting Or.Rev.Stat. § 656.005(8)(a)) (emphasis added in *Kessen* ).

In interpreting our own statutory scheme for workers' compensation, when the language is ambiguous we look to the object sought to be attained. § 2–4–203(1)(a), 1B C.R.S. (1980). We have stated that "[t]he primary purpose of the Workmen's Compensation Act is to afford workmen compensation for job-related injuries, regardless of fault." *Frohlick Crane Service, Inc. v. Mack*, 182 Colo. 34, 38, 510 P.2d 891, 893 (1973). Although we made that statement in the context of considering the effect of negligence by the employer or employee, *id.*, it is equally applicable to the situation of intentionally-inflicted injury. We have also recognized that one of the aims of workers' compensation is "to spread the cost of hazards of the workplace, one of which is intentional interference with an employee's legal interests by a fellow employee." *Kandt*, 645 P.2d at 1305. Finally, and most importantly, the legislature has provided that "[i]t is the intent of the general assembly that the 'Workers' Compensation Act of Colorado' be interpreted so as to assure the quick and efficient delivery of disability and medical benefits to injured workers at a reasonable cost to employers.... The workers' compensation system in Colorado is based on a mutual renunciation of common law rights and defenses by employers and employees alike." § 8–40–102, 3B C.R.S. (1990 Supp.).

Judicial recognition of an initial aggressor defense would be inconsistent with the aims of the Workers' Compensation Act. It would introduce the common law concept of fault into a comprehensive statutory scheme designed to allocate cost and ensure compensation, not analyze culpability. Such analysis of "who threw the first punch" is contrary to quick and efficient administration of disability benefits. The Workers' Compensation Act of Colorado does not expressly authorize a defense against an initial aggressor in an altercation leading to an otherwise compensable injury. In the absence of such express authorization, we decline to read an initial aggressor defense into the statutory scheme.[8]

### C.

■ The employer group also asserts that Blair cannot recover because his injuries must be considered to be "intentionally self-inflicted." Section 8–41–301(1)(c) of the Workers' Compensation Act of Colorado precludes recovery when an injury is "intentionally self-inflicted." The employer group asserts that this language provides a defense to coverage when the claimant is the initial aggressor in an altercation, at least under circumstances such as those presented by the facts of this case.

■ In interpreting a statute we seek to determine the intent of the legislature as expressed in the language it selected. *Kane v. Town of Estes Park*, 786 P.2d 412, 415 (Colo.1990). We must give words their commonly accepted and understood meaning. *Griffin v. S.W. Devanney & Co.*, 775 P.2d 555, 559 (Colo.1989). A strained or forced construction is to be avoided. *Kern v. Gebhardt*, 746 P.2d 1340, 1344 (Colo. 1987). These well-established principles provide the framework for our construction of the term "intentionally self-inflicted" in section 8–41–301(1)(c).

---

**8.** The facts of this case as found by the ALJ do not present a situation in which the claimant's injury was caused in an incident initiated by an act of the claimant that was deliberated, premeditated or of such serious character as to exhibit a willful intent to injure another. We need not consider, therefore, whether what has been characterized as a "willful misconduct" defense would be recognized under Colorado workers' compensation law based on such egregious misconduct. *See generally* Larson, § 11.15(d).

We have recognized the defense that an injury was "intentionally self-inflicted" in the situation of suicide. *See, e.g., Industrial Commission of Colorado v. Peterson,* 151 Colo. 289, 290–91, 377 P.2d 542, 544–45 (1962); *London & Lancashire,* 135 Colo. at 374, 311 P.2d at 707. Suicide is the intended result of a self-inflicted act. In contrast, a person who instigates a fight, although aware that it may have repercussions, likely is intent on injuring the other party and can be deemed at most reckless or grossly negligent in the context of his or her own injury. We cannot read the language "intentionally self-inflicted" so broadly that it encompasses injuries resulting from grossly negligent or reckless behavior.[9] *See, e.g., Cunning v. City of Hopkins,* 258 Minn. 306, 103 N.W.2d 876, 880 (1960) (statute providing defense to workers' compensation claims for intentionally self-inflicted injuries contemplates deliberate intent to injure, not failure to realize probable consequences of foolish acts). To do so would require a strained and forced reading of the term "intentionally self-inflicted." The commonly accepted and understood meaning of the words does not have the broad scope argued for by the employer group.

### III.

An injury sustained in an assault resulting from a work-related dispute is compensable under the Workers' Compensation Act of Colorado. In addition, an injury otherwise compensable under that act is not rendered non-compensable by the fact that the claimant was the initial aggressor. Nor can an injury be considered self-inflicted simply because the injured worker was the initial aggressor. Thus, we affirm the judgment of the Colorado Court of Appeals setting aside the order of the Industrial Claim Appeals Panel and remanding the case for further proceedings.

---

**9.** The Colorado act expressly excepts from coverage "disability or death caused by or resulting from mental or emotional stress unless it is shown by competent evidence that such mental or emotional stress is proximately caused solely by hazards to which the worker would not have been equally exposed outside the employment [and] ... disability or death caused by heart attack unless it is shown by competent evidence that such heart attack was proximately caused by an unusual exertion arising out of and within the course of the employment." § 8–41–302(1), (2), 3B C.R.S. (1990 Supp.). In the face of such intricately crafted exceptions by the legislature, indicating careful attention to the nature and scope of excepted injuries, we decline to give a strained and extremely broad reading to the language "intentionally self-inflicted."